Gloria A. **DECKER**, Director of the State Lottery Commission, Plaintiff/Appellee,

v.

James **ROES**, Defendant/Appellant.

In the Matter of James **ROES**, Debtor.

Civ. No. 82–2210.
Bankruptcy No. 81–0854.

United States District Court,
D. New Jersey.

Jan. 31, 1983.

Kleinberg, Moroney, Masterson & Schachter by James E. Masterson, Millburn, N.J., for defendant/appellant.

Irwin I. Kimmelman, Atty. Gen. of New Jersey by Harley A. Williams, Deputy Atty. Gen., Trenton, for plaintiff/appellee.

## OPINION

BIUNNO, Senior District Judge.

This is an appeal from an order of the Bankruptcy Judge determining that the funds owed by the debtor to the N.J. State Lottery Commission are not discharged and survive the bankruptcy.

The dispute arose because, although the debtor listed the Lottery Commission claim (as the claim of a creditor not entitled to priority), the notice sent out as a consequence indicated neither the interest of the Lottery Commission nor the amount of the claim. The schedule of debts disclosed items owed to more than one New Jersey agency, with the amount indicated as "unknown" except for the Lottery Commission item, which had a specific dollar amount. The notices sent out, however, carried no indication of what kind of claim was involved. A summary of the pertinent entries on the schedule filed by the debtor, and of the mailing list used for sending out notices of the order setting various cut-off dates, is attached as Exhibit A. A condensation of the pertinent parts of the notice is set out as Exhibit B, but it is observed that the notice is evidently a computer printout on a form with standard text preprinted. The preprinted standard text is in very small type, perhaps 6 point size, or about the size of the type used in the footnotes in Federal Reporter, Federal Supplement, N.J. Reports, and the like, with which the bench and bar in this District are familiar.

As the schedules indicate, the State Treasurer or the Division of Taxation received more than one notice, but without indication to show what the claim involved was. The debtor's schedule indicates at least 3 different items: one, for amounts due to the Division of Employment Security (N.J. unemployment tax), sales tax, and funds belonging to the Lottery Commission. As an individual, the debtor may well have had a liability for N.J. Gross Income Tax as well.

In any event, there is no dispute that the Lottery Commission never received the notice and was unaware of the bankruptcy. As explained at oral argument, the Lottery Commission filed suit in Superior Court to recover what was due and unpaid to it. The debtor's attorney then wrote to inform the Commission of the existence of the bankruptcy and the effect of the automatic stay.

The Lottery Commission, within 20 or 22 days or so of that letter, caused to be filed with the Bankruptcy Court a complaint asserting that the debt owed to it was not dischargeable. This complaint was opposed on the ground that it had been filed later than the last date set by the order, and that no leave for late filing had been applied for or granted. After argument, the Bankruptcy Judge dismissed the complaint without prejudice.

Thereafter, the complaint was filed again, this time including a request that leave be granted for late filing on the ground of excusable neglect, and it was on the issues of timeliness of the application for leave, and of the showing of excusable neglect, that the contest centered. The decision and order ruled in favor of the Lottery Commission, and thus the debtor appealed here.

Some fundamentals are worth noting here:

*One:* Funds received by agents such as the debtor from the sale of lottery tickets are trust funds under the applicable rules of the Lottery Commission.

N.J.A.C. 17:20–10.1 expressly declares that: "Moneys received by an agent from the sale of lottery tickets are the property of Lottery and are held by the agent in trust for the Lottery."

N.J.A.C. 17:20–6.1 requires lottery sales agents to deposit all moneys received by them from the sale of lottery tickets in a designated bank "to the credit of the State Lottery Fund."

*Two:* It is provided in 11 USC § 523(a)(4), that a discharge (under designated sections) "does not discharge an individual debtor from any debt ... for ... defalcation while acting in a fiduciary capacity ..."

There are other pertinent provisions, but the ones noted are sufficient for the purposes of this appeal.

*Three:* It is a fact not in dispute that the debtor, instead of depositing the trust funds in a designated bank, misused them to pay claims of other creditors, a course of conduct that comes within the primary meaning of "defalcation", which standard dictionaries will show as misusing money trusted to one's care.

The dispute below, and on appeal here, centers on the timeliness of the second complaint filed which included an application for leave to file beyond the date set by the order. This court regards that issue to be a false issue in the sense that the order appealed from is correct, but for the wrong reason. Appeals are taken to review the validity of judgments, and whether the reasons given below are sound or not does not matter if the judgment is correct.

As this court sees the case, the initial objection to the first complaint was not well taken, and that first complaint should not have been dismissed, albeit without prejudice, because no leave was needed to file it after the cutoff date set by the order.

In this circuit, the rule laid down by *In re Harbor Tank Storage, Co.,* 385 F.2d 111 (CA 3, 1967) is controlling. In that case it was held that a creditor, not sent the notices of orders it was entitled to have sent to it, "had an absolute right to file a claim nunc pro tunc in the proceeding", and the Court

of Appeals remanded so that the claim would be classified "as it would have been classified had it been timely filed", 385 F.2d at 112. Again, the Court of Appeals emphasized that:

"We do not agree that Murray Oil's participation as a creditor was dependent on the district court's discretion. We hold that under the circumstances, Murray Oil had an absolute right to file and prove its claim in the proceeding despite the fact that the bar date had passed and the plan was confirmed. The rejection of the petition * * * constitutes a denial of due process". 385 F.2d at 114.

The decision in *Harbor Tank* is grounded on the respectable precedent of *City of New York v. New York, N.H. & H.R.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953), which was itself grounded on the respectable precedent of *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

As noted in *Harbor Tank,* "the essential issue—what is the effect of the failure to give notice to a known creditor—is identical to both" the *City of New York* case and the *Harbor Tank* case, even though one was under former § 77 (railroad reorganization) and the other under former Chapter X (reorganization).

The principle is no different than that which applies in any straightforward civil suit, where the time for answer runs from the time of service of process. In the bankruptcy field, the practice is to issue orders setting specific dates for taking particular steps, but this is all on the assumption that copies of the notice of the order will go out to known creditors long enough before the various deadlines to provide a reasonable, due process time period to take the required steps.

When the notices go out in a fashion not calculated to indicate to the creditor the nature of the scheduled claim, as was the case here for the claim of the Lottery Commission, the time simply does not run, any more than it runs against any party not served with process according to law.

This being the fundamental factor, the court is of the view that the first complaint objecting to discharge of the trust fund debt was not out of time at all. No proper notice having been sent, no time was running. When the Lottery Commission learned indirectly of the filing of bankruptcy papers, it acted promptly and diligently, even though not obliged to do so, to file its papers within less time thereafter than it would have had if the notice had been addressed properly.

Nor can the debtor complain. By definition, a claim arising out of the defalcation of trust funds is not dischargeable. It was the debtor's conduct that misused the trust funds to pay other creditors, whose claims were correspondingly reduced. This course of misconduct reduced the aggregate of the dischargeable claims, and increased the amount of the non-dischargeable claim.

To sustain the debtor's objection to the first filed complaint, which this court considers to have been filed of right under the circumstances not in dispute, would be to allow him to benefit not only from his own wrong, but also to benefit from a clerical mistake not chargeable to the creditor.

For the foregoing reasons, the order appealed from will be affirmed.

NOTE: The difficulty encountered here may be due to mechanical processing steps established to enable the Bankruptcy Court to expedite its paper work in the face of a fast-growing workload, due in part to the more liberal provisions of the Bankruptcy Reform Act of 1978, and in part to the dismal economic inactivity being experienced.

The mailing list is evidently made to fit each creditor's name and mailing address on a single line across the page of a computer printout. For a listing like that of the Lottery Commission, one line does not have enough room, and the key designation "Lottery Commission" was evidently discarded.

Also, it evidently is the practice in having the computer print out the Order and Notice, to print only the abbreviated name and address of the creditor, to be displayed through the window envelope, but not the nature and amount of the claim when the case is a "no asset" case. How these are classified is not clear, but the debtor listed $5,000 of assets subject to a lien of $30,000. Whether this is a valid basis for treating the case as a "no asset" case is not clear. General creditors may be able to challenge the lien and gain access to the supposedly liened assets.

Even in a true "no asset" case, entry of the nature and amount of the claim on the order and notice (as reported by the debtor on the schedules) would appear to be important information from a due process point of view in assisting the creditor to identify the claim. This would be particularly true for a creditor like a State agency, where the computer program routinely sends out notices to agencies likely to be creditors whether listed or not. See Appendix A, with notations for notices numbered "Special O1" and "Special O2". This practice guarantees that if a schedule lists claims owed to the same agencies, the agency will receive at least two identical notices and, in a "no asset" case, no dollar amount or description to indicate the existence of more than one claim, or, as in this case, of a non-dischargeable claim.

These observations are made merely by way of comment and with the thought that they may be helpful in reviewing existing procedures. Certainly, if one of the notices had indicated "Lottery Commission" and "$13,000", the likelihood is that a complaint would have been filed before February 23, 1981 and the debt would have been found non-dischargeable without the extra effort generated in this instance. Thus can Parkinson's Law be contained.

# APPENDIX A

Excerpts from Schedule A–1, Creditors having priority.

\*\*\*

| | | Amount |
|---|---|---|
| State of New Jersey Tax Division Trenton, NJ | Sales and income taxes | Unknown |
| State of New Jersey Div. of Employment Security John Fitch Plaza Trenton, NJ | UCC Contribution | Unknown |

\*\*\*

Excerpts from Schedule A–3, Creditors Having Unsecured Claims

Without Priority
\*\*\*

State of New Jersey
Department of the Treasury
Lottery Commission
West State St. & Willow St.
Trenton, NJ 08608                                   $13,000.00

\*\*\*

Excerpts from Bankruptcy Clerk's list of Notices sent on 1/7/81

\*\*\*

Special 01 Special Procedures Section Div. of Tax of State of N.J.
          West State & Willow Sts, Trenton, NJ 08625

Special 02 N.J. Div. of Employment Security
          John Fitchway Plaza, Trenton, NJ 08611
\*\*\*

0000016    State of New Jersey Department of the Treasury
          West State St and Willow St, Trenton, NJ 08608

0000017    State of New Jersey Div. of Employment Security
          John Fitch Plaza, Trenton, NJ 08608

0000018    State of New Jersey Tax Division, Trenton, NJ

\*\*\*

# APPENDIX B

Excerpts from Order and Notice dated January 7, 1981.

\*\*\*\*

[In re JAMES M. ROES 19 WEST GIBBONS ST]
[LINDEN NJ 07036 SSN 025–32–6656]
[OTHER NAMES USED—DICKS DELI & MIKES DELI]

ORDER FOR MEETING OF CREDITORS COMBINED WITH
NOTICE THEREOF AND OF AUTOMATIC STAY.

To the debtor, his creditors and other parties in interest:
          An order for relief under 11 USC Chapter 7 having been entered on a
petition filed by for against the above named debtor on [December 17, 1982] it is
Ordered and Notice is hereby given that

A meeting of creditors pursuant to 11 USC § 341(a) shall be held at *** [Jan. 23, 1981***9:00 A.M.] ***

You are further notified that:

***

As a result of the filing of the petition, certain acts and proceedings against the debtor and his property are stayed as provided in 11 USC § 362(a). Significant parts of this section are reproduced on the reverse side of this notice.

Unless the court extends the time, any objections to the debtor's claim of exempt property (Schedule B4) must be filed by [Feb. 9, 1981].

[March 24, 1981 is fixed as the last day for the]
[filing of objections to the discharge of the debtor]

[February 23, 1981 is fixed as the last day for the]
[filing of a complaint to determine the dischargeability]
[of any debt pursuant to 11 USC Section 523–C–.]
[If no complaint to determine the dischargeability]
[of a debt under clause 2, 4 or 6 of 11 U.S.C.]
[Section 523–A– is filed on or before February 23]
[1981 the debt may be discharged]

***

NOTE: Material in [brackets] is text produced by computer printout, all in CAPITALS. Other material is preprinted in much smaller type.

NOTE: The name and address, as shown for each notice shown on the Excerpt from List of Notices Sent, Appendix A, above, is printed on the face of the notice so that it will show on a window envelope. The notice does not reproduce the information listed on Schedule A for the nature of the claim or the amount.