**In re David Leslie BARLEY & Linda Margaret Barley, Debtors.**

**Max BROWN & Madonna Brown, Plaintiffs,**

v.

**David Leslie BARLEY, Defendant.**

**Bankruptcy No. 88–11633.
Adv. No. 90–1055.**

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

July 5, 1991.

Charles S. Brown, Arthur C. Brown, New Castle, Ind., for plaintiffs.

P. Robert Dawalt, Jr., Marion, Ind., for defendant.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court following trial of the issues raised by plaintiff's complaint to determine dischargeability of debt and objecting to the discharge of Debtor, David Leslie Barley. It requires the court to determine whether it can provide any remedy where a debtor intentionally fails to schedule a particular creditor, when that creditor learns of the bankruptcy in time to meaningfully participate in the proceedings and, yet, elects not to do so.

### Facts

Plaintiffs, Max and Madonna Brown, began a joint business venture with David Barley, in late 1984. More specifically, defendant was to have sold them a one-half interest in Diversified Printing and Publishing, Inc. on December 18, 1984. Due to a number of misunderstandings, by the mutual agreement of the parties this "capital investment" was later converted to debt, represented by a promissory note, in the amount of $23,750.00, dated November 7, 1986. The note required the defendant to pay the amount due, with interest at 12½%, in semi-annual installments beginning January 24, 1987.

Mr. Barley apparently made some payments on the note during 1987, but those payments were not sufficient to satisfy the accruing interest. By the end of that year the balance due had grown to $25,696.87. Beginning in January 1988, he began to make regular monthly payments in the sum of $400.00 each. With the exception of August, 1988 when no payment was made, these payments continued through March, 1989.

On November 17, 1988, defendant and his wife filed for relief under Chapter 7 of the United States Bankruptcy Code. The clerk issued the notice of the bankruptcy on November 25, 1988. This notice advised creditors that the last day to file complaints objecting to the discharge or to determine dischargeability of debt was February 21, 1989. It also advised them

that claims were to be filed by March 20, 1989. Unfortunately, plaintiffs were not among the creditors to whom this notice was issued. In preparing the bankruptcy schedules, defendant knowingly and purposely omitted them and their claim from the schedule of creditors.[1]

Defendant's efforts to keep the plaintiffs unaware of the bankruptcy were not successful. In January of 1989, weeks before the deadline for complaints concerning the discharge or dischargeability and months before the claims bar date, they learned of the proceeding. Upon doing so, Mr. Brown met with the defendant to discuss the matter. The defendant assured him that there was no reason to worry about the bankruptcy or to participate in the proceeding, because he intended to continue making monthly payments and would see that the money due was paid. The plaintiffs followed this advice and did nothing. Although they had actual knowledge of the bankruptcy, they did not think it was important because they had not been listed as creditors.

The last day for filing complaints concerning the discharge or the dischargeability of debt passed on February 21, 1989. On February 23, 1989 debtors received their discharge. The claims bar date expired on March 20, 1989. Defendant's monthly payments to the plaintiffs stopped in April, 1989.

After having gone without payments for a year, plaintiffs became sufficiently concerned about the situation to seek legal advice. By a letter dated April 10, 1990, their attorney contacted the defendant about the payment problem. In response, he received a letter from debtors' counsel, advising him of the bankruptcy and that

the attempt at collection was improper. The letter further informed counsel that defendant denied the existence of any promissory note payable to the plaintiffs!

On May 25, 1990, plaintiffs filed a proof of claim. They also initiated this adversary proceeding. They seek a determination that defendant's obligation to them is nondischargeable pursuant to § 523(a)(2)(A), as having been incurred through false pretenses, false representations, or actual fraud,[2] and pursuant to § 523(a)(3), as unscheduled creditors. The complaint also objects to debtor's discharge, pursuant to § 727(a)(4), based upon defendant's false oath in knowingly filing false schedules from which they were consciously omitted. Unfortunately, plaintiffs' actual knowledge of this case since January 1989 dooms their efforts to failure.

### Section 523(a)(2)

Pursuant to Bankruptcy Rule 4007(c) and the court's notice of November 25, 1988, the last date for filing a dischargeability complaint under § 523(a)(2), (4) or (6), was February 21, 1989. Plaintiffs filed the present complaint on May 25, 1990. It is apparent that the § 523(a)(2) action is untimely.

Defendant never raised, either in its answer or at trial, the untimeliness of plaintiffs' complaint. Plaintiffs contend that, having failed to do so, the defense has been waived. The issue, thus, arises as to whether this time limit is an affirmative defense, which the debtor must specifically raise, or whether the lapse of time bars plaintiffs' cause of action. The Supreme Court has stated that whether a lapse of time operates

---

1. Despite having been subpoenaed to testify at trial, defendant failed to appear in person. Accordingly, the court has not received any explanation from the defendant for the omission, in terms of whether it was motivated by some misguided attempt to protect plaintiffs from the consequences of his bankruptcy or out of his fears that information they possessed might have some detrimental impact on the proceedings and the benefits he hoped to obtain. Nonetheless, it is clear that the omission was not the result of simple oversight or a mistaken belief that plaintiffs were not creditors. Defendant

had been making regular monthly payments to them for almost a year by the time he filed bankruptcy and continued to do so for some months after the bankruptcy began. Furthermore, in both December, 1988 and January, 1989 he had written Mr. Brown concerning his efforts at repayment.

2. The fraud complained of relates to fraud in the original sale of an interest in Diversified Printing back in 1984, not to any fraud in debtors' post-petition conduct toward the plaintiffs.

to extinguish the right which is the foundation for the claim or merely to bar the right which is the foundation for the claim or merely to bar the remedy for its enforcement ... [depends on] whether the cause of action is one created by [ ] statute or one arising from the common law, with the attributed consequence in the one case that the bar is absolute and invariable by any act of the parties, in the other that it may be waived by contract or otherwise. *Midstate Horticultural Co., Inc. v. Pennsylvania R. Co.,* 320 U.S. 356, 64 S.Ct. 128, 129–130 [88 L.Ed. 96] (1943) (footnotes omitted).

The Seventh Circuit has recognized this distinction to be a question of jurisdiction. *Appleton Elec. Co. v. Graves Truck Line, Inc.,* 635 F.2d 603, 608 (7th Cir.1980).

Several bankruptcy courts have concluded that the time limits for filing dischargeability complaints fixed by Bankruptcy Rules 4007(c) and 9006(b)(3) are jurisdictional. *In re Kirsch,* 65 B.R. 297 (Bankr. N.D.Ill.1986); *In re Krause,* 114 B.R. 582, 605 (Bankr.N.D.Ind.1988); *In re Booth,* 103 B.R. 800 (Bankr.S.D.Miss.1989); *In re Ezell,* 116 B.R. 556 (Bankr.N.D.Ohio 1990). Contra *In re Santos,* 112 B.R. 1001 (9th Cir.BAP 1990). The result reached in these cases is clearly the intent of Congress when drafting the Bankruptcy Code. The question of dischargeability is, without dispute, a statutorily created cause of action given life by Title 11 of the United States Code. The Bankruptcy Rules set the deadline for filing a dischargeability complaint and provide that the only way to extend it is to petition the court before the original deadline expires. Bankruptcy Rules 4007(c) and 9006(b)(3). *In re Hill,* 811 F.2d 484, 487 (9th Cir.1987); *In re Alton,* 837 F.2d 457, 459 (11th Cir.1988). Section 523(c) specifically imposes the burden upon the creditor to initiate a dischargeability action and provides that the failure to act renders the obligation discharged. The parties may not even belatedly stipulate to waive or extend these time limits. *In re Snyder,* 102 B.R. 874 (Bankr.S.D.Fla.1989); *In re Neese,* 87 B.R. 609 (9th Cir.BAP 1988).

The bankruptcy court is powerless to extend the time for filing dischargeability complaints once it has expired and the debtor may not waive these time limits by stipulating to the prosecution of an untimely complaint. It would be anomalous indeed for the plaintiffs to obtain, through inadvertence or other failure to specifically plead an affirmative defense, precisely the same relief the court could not properly give, had they requested it directly, and which the debtor could not knowingly consent to. The logical conclusion is that the lapse of time for filing dischargeability complaints extinguishes the cause of action. There is no basis for allowing surreptitious entry through the back door that which Congress will not publicly admit through the front. For these reasons, we reject the holding in *Santos,* 112 B.R. 1001 and conclude that the timeliness of a dischargeability complaint is part and parcel of the creditor's cause of action and not merely a procedural bar that can be waived if not pled. A timely complaint is a jurisdictional prerequisite to a creditor's right to relief.

### Section 523(a)(3)

Plaintiffs also seek relief pursuant to § 523(a)(3). This section of the Bankruptcy Code addresses the dischargeability of a debtor's obligations to creditors who are not listed or scheduled in the proceeding. Such claims are not discharged unless the creditor "had notice or actual knowledge of the case in time" to either file a timely proof of claim or a timely request for a determination of dischargeability. 11 U.S.C. § 523(a)(3)(A) & (B). Thus, a "debt is excepted from discharge if it was not scheduled in time to permit timely action by the creditor to protect his rights, unless the creditor had notice or actual knowledge of the case." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 364 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 78–79 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5864, 6320.

The language of the statute and its accompanying legislative history leave no doubt that "mere knowledge of a pending

bankruptcy proceeding is sufficient to bar the claim of a creditor who took no action, whether or not that creditor received official notice from the court of various pertinent dates." *Alton*, 837 F.2d at 460; *Matter of Compton*, 891 F.2d 1180, 1184 (5th Cir.1990); *In re Green*, 876 F.2d 854, 857 (10th Cir.1989); *In re Price*, 871 F.2d 97, 99 (9th Cir.1989). The debtor bears the burden of proving that the complaining creditor obtained notice or actual knowledge of the bankruptcy in time to protect its rights. *In re Brown*, 27 B.R. 151, 153 (Bankr. N.D.Ohio 1982); *In re Gray*, 57 B.R. 927, 931–32 (Bankr.D.R.I.1986), aff'd 60 B.R. 428 (D.R.I.1986).

■ It is not disputed that plaintiffs were not scheduled as creditors. Nonetheless, they learned of defendant's bankruptcy in January of 1989, weeks before the expiration of the applicable deadlines, giving them more than ample time to meaningfully participate in the proceeding. Because plaintiffs had actual knowledge of the bankruptcy in time to take action to protect their interests, the debt cannot be declared nondischargeable pursuant to § 523(a)(3).

### Section 727

■ Plaintiffs finally argue that, pursuant to § 727(a)(4), the defendant should be denied a discharge. Unfortunately, the objection, being made over a year after the fact, is untimely. *In re Puente*, 49 B.R. 966, 968 (Bankr.W.D.N.Y.1985). Debtor's discharge was entered on February 23, 1989. The deadline for filing complaints objecting to it was February 21, 1989. At best, what plaintiffs are, in effect, requesting is that the court revoke the discharge pursuant to § 727(d)(1).[3] Section 727(d)(1) provides:

> ... the court shall revoke a discharge ... if—such discharge was obtained through the fraud of the debtor, *and the requesting party did not know of such fraud* until after the granting of such discharge. 11 U.S.C. § 727(d)(1) (emphasis added).

**3.** Neither party has commented upon the one year time limit for such complaints established

Plaintiffs bear the burden of proving not only that the discharge was obtained through fraudulent means but that they were unaware of the alleged fraud at the time the discharge was granted. *In re Arianoutsos*, 116 B.R. 116, 118 (Bankr. N.D.Ill.1990). *See also Matter of McElmurry*, 23 B.R. 533, 535 (D.W.D.Mo.1982); *In re Stein*, 102 B.R. 363, 367 (Bankr. S.D.N.Y.1989); *In re Benak*, 91 B.R. 1008, 1009 (Bankr.S.D.Fla.1988); *In re Puente*, 49 B.R. at 968; *In re Kirschner*, 46 B.R. 583, 586 (Bankr.E.D.N.Y.1985).

■ The court is convinced that a fraud was perpetrated, when the defendant signed and filed bankruptcy schedules knowingly omitting the plaintiffs as creditors, which would otherwise justify revocation of his discharge. *See Arianoutsos*, 116 B.R. at 118 ("A discharge obtained through the debtor's fraud in filing false schedules can be revoked under [§ 727(d)(1) ]"). Nonetheless, plaintiffs were fully aware of this omission well before the discharge was granted. As a result, plaintiffs have failed in their burden of proving grounds for revocation of debtor's discharge pursuant to § 727(d)(1).

### Conclusion

Despite their actual knowledge of the bankruptcy, plaintiff's failed to take any action to protect their interests. Unfortunately, they relied upon the assurances of a man, whom they already believed had deceived them years before, that they had no need to participate in the bankruptcy and that his debt to them would be paid. While the court can sympathize with plaintiffs' situation, it is unable to provide plaintiffs with relief. As the Supreme Court stated:

> 'We agree that this is a hard case, but we cannot agree that it should be allowed to make bad law.' *Alton*, 837 F.2d at 459 (quoting *FCC v. WOKO, Inc.*, 329 U.S. 223, 229, 67 S.Ct. 213, 216 [91 L.Ed. 204] (1946) (Jackson, J.)).

It appears that the only potential recourse for plaintiffs' complaints lies in the crimi-

by § 727(e)(1). Because of the court's ruling on the merits, it need not address this issue.

nal provisions of the United States Code concerning bankruptcy crimes. *See* 18 U.S.C. § 152. Pursuant to 18 U.S.C. § 3057, the clerk shall transmit a copy of this decision to the United States Attorney.

A judgment of dismissal will be entered.