**In re David POSKANZER and David Poskanzer Mortgage Company, Debtors.**

**Martin E. DOLLINGER, Plaintiff,**

v.

**David POSKANZER, Defendant.**

Civ. A. No. 92–3262 (AMW).
Bankruptcy No. 90–24943 (WFT).
Adv. No. 91–2255.

United States District Court,
D. New Jersey.

Oct. 13, 1992.

■■■■■■■■■

Merrill M. O'Brien, Dollinger & Dollinger, Rochelle Park, N.J., for plaintiff.

George B. Gelman, Gelman & McNish, Hackensack, N.J., for defendant.

Cole, Schotz, Bernstein, Meisel & Forman, Hackensack, N.J., for trustee.

## OPINION

WOLIN, District Judge.

Before this Court is an appeal of a bankruptcy court decision brought by creditor-appellant, Martin Dollinger ("Dollinger"). The bankruptcy court had ruled that Dollinger's claim of nondischargeability was barred for failure to file his complaint or an extension before the lapse of the bar date. For the reasons set forth below, the bankruptcy court's decision is affirmed.

## BACKGROUND

The debtor-appellee, David Poskanzer ("Poskanzer"), filed a *pro se* individual voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code (the "Code") on November 7, 1990. The bankruptcy court subsequently converted this petition to a Chapter 11 proceeding. Before filing for bankruptcy, Poskanzer was engaged in the business of commercial real estate development under various business names. Dollinger had served as an attorney in some of Poskanzer's business ventures and as a partner in others.

Because Poskanzer failed to name Dollinger as a creditor in his bankruptcy petition or schedules, the bankruptcy court clerk's "Notice to Creditors" ("creditors' notice") failed to include Dollinger. The creditors' notice scheduled the first creditors' meeting pursuant to Code section 341 on December 21, 1990, and provided that the bar date for objections to discharge would be on February 19, 1991, as mandated by Bankruptcy Rule 4007(c).[1] The initial creditors' meeting was adjourned until January 3, 1991. Accordingly, under Bankr.R. 4007(c), the bar date was set for March 4, 1991.

Dollinger stipulated that he learned of the meeting from other sources and, therefore, was represented at the creditors' meeting. The bankruptcy court observed that Dollinger's law firm received its initial notice by a court-ordered newspaper publication. Trial Tr. at p. 19, lines 12–16.[2]

Dollinger filed his nondischargeability complaint with the bankruptcy court on April 29, 1991, after the bar date established by Bankr.R. 4007(c). In his complaint, Dollinger averred damages in the amount of $2,427,060.02. Pl.Compl. p. 3. This figure was based on legal services rendered by Dollinger and promissory notes in the amount of $1,387,842 signed by Poskanzer in Dollinger's favor. Pl.Compl. p. 2.

Poskanzer filed his answer on June 19, 1991 without including an objection that the nondischargeability complaint was time barred under Bankr.R. 4007(c). After the bankruptcy court trial began, Poskanzer moved to dismiss the complaint based upon Dollinger's failure to file his nondischargeability complaint within the sixty-day limit imposed by Bankr.R. 4007(c). The bankruptcy court initially denied the motion, but, later reconsidered, and requested full-briefing of the issue raised. After a review of the parties' submissions, the bankruptcy court, in an opinion written by the

---

1. Bankr.R. 4007 provides the time frame for filing nondischargeability complaints under Chapters 7 and 11:

   A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors pursuant to § 341(a). The court shall give all creditors not less than 30 days notice of the time so fixed in the manner provided in Rule 2002. On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.
   Bankr.R. 4007(c).

2. The bankruptcy court ordered publication in *The Bergen Record, Newark Star–Ledger,* and *New York Times* for March 22, 1991 and April 6, 1991.

Honorable William F. Tuohey, granted Poskanzer's motion. Judge Tuohey held that Dollinger's actual knowledge of the creditors' meeting was sufficient notice of the bar date, and that Poskanzer had not waived this defense by his failure to affirmatively plead it in his answer.

## DISCUSSION

Dollinger appealed from the bankruptcy court's opinion and order, posing two arguments: first, that dismissal of his complaint denied him due process and equal protection of the law; and, second, that Poskanzer's failure to plead Bankr.R. 4007(c) as a defense in his answer constituted a waiver.

### A. *Standards of Review*

■ When sitting as an appellate tribunal in bankruptcy proceedings, this Court may only disturb fact-findings that are clearly erroneous. Bankr.R. 8013. As to legal issues, the scope of review is plenary. *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 103 (3d Cir.1981). The bankruptcy court's decision to bar Dollinger's nondischargeability complaint was a resolution of a legal question and is now properly subject to review. Three issues are implicit in this review: (1) whether the Code requires extension of the bar date where Dollinger did not receive notice of the bar date but had actual knowledge of the creditors' meeting; (2) whether Poskanzer waived the bar date by failing to plead it in his answer; and (3) whether dismissal of Dollinger's complaint based on failure to

file his complaint of nondischargeability within the bar date denies Dollinger due process and equal protection where Dollinger, possessed actual knowledge of the creditors' meeting, but failed to receive the requisite creditors' notice.

### B. *Dollinger's Failure to Meet the Bar Date*

■ Bankr.R. 4007(c) provides the general notice requirements and time frame that a debtor must satisfy to discharge a debt under Code section 523(c). More specifically, Bankr.R. 4007(c) provides that a complaint to determine the dischargeability of any debt pursuant to section 523(c) cannot be filed later than sixty-days after the "first date set for the meeting of creditors." Bankr.R. 4007(c).[3] This creditors' meeting is commonly known as a "341 meeting."[4] The Bankruptcy Rules anticipate that creditors should receive thirty-days notice of this meeting in a manner prescribed by Bankr.R. 2002. Bankr.R. 4007(c).

A bankruptcy court possesses limited discretion, however, to permit filing beyond the bar date. Bankr.R. 9006(b)(3).[5] A creditor's receipt of inadequate notice represents one instance where courts have traditionally extended the time to file the complaint. But this discretion is limited. More specifically, section 523(a)(3)(B) of the Code tempers the discretion permitted under the Bankruptcy Rules by limiting late filing only to those creditors who lack notice or actual knowledge of the case to permit

**3.** Generally, the bar date for objections to dischargeability is calculated from the first-scheduled creditor's meeting. *In re Cortes,* 125 B.R. 418, 419–20 (E.D.Pa.1991). The bankruptcy court found, however, that, because Dollinger was not a scheduled and noticed creditor, it would recognize the date January 3, 1991, which represents the date upon which the creditor's meeting was actually held. Bankruptcy Court Op. at p. 4. As this question has not been raised on appeal, this Court will not disturb the bankruptcy court's determination.

**4.** This name derives from section 341 of the Code, which furnishes the specifications for "meetings of creditors and equity security holders":

   (a) Within a reasonable time after the order for relief in a case under this title, there shall be a meeting of creditors.
11 U.S.C. § 341.

**5.** This section permits limited enlargement of time: "The court may enlarge the time for taking action under Rules 1006(b)(2), 3002(c), 4003(b), 4004(a), 4007(c), 8002, and 9033, only to the extent and under the condition stated in those rules." Bankr.R. 9006(b)(3). In turn, Bankr.Rule 4007(c) authorizes the Bankruptcy Court to extend the bar date only "for cause" and only when brought before time expires. Bankr.R. 4007(c).

timely filing.[6] A plain-reading of the Code and the Bankruptcy Rules suggests that a creditor's possession of actual knowledge of the case vitiates an inadequately noticed creditor's ability to file out of time.

Although the Third Circuit has not ruled on the issue before this Court, persuasive authority exists from other circuits. Most notably, the Fifth, Ninth, Tenth, Eleventh and Twelfth Circuits have had factually similar cases involving the identical issue presented here. A survey of their rulings is instructive.

The Fifth Circuit has ruled that notice of bankruptcy proceedings—without formal notice of the bar date—received in time to act prior to the bar date constitutes sufficient notice under the Code. *In re Compton*, 891 F.2d 1180 (5th Cir.1990); *Neeley v. Murchison*, 815 F.2d 345 (5th Cir.1987). In *Compton*, the debtors listed the creditor with an incorrect address on their schedules. 891 F.2d at 1184. As a result, the creditor's debt was not duly scheduled within the meaning of the Code. *Id.* Debtors' counsel had written creditor's counsel, however, informing him that the debtors had filed for bankruptcy. *Id.* at 1182. Despite this letter and on-going correspondence between counsel, creditor filed a complaint against dischargeability ten-days after the bar date prescribed by Bankr.R. 4007(c). *Id.*

In its affirmance of the bankruptcy court's dismissal of the creditor's complaint, the Fifth Circuit found that the improper scheduling of a debt does not create an automatic right to file a nondischargeability complaint beyond the bar date. *Id.* at 1184. Rather, when a creditor has actual knowledge of the proceedings with adequate time to file a complaint within the bar date, a court may discharge the debt if no nondischargeability complaint is received before the bar date. *Id.*

The rationale behind this rule is that the Code places "a heavy burden on a creditor to protect his rights." *Neeley*, 815 F.2d at 347. Accordingly, section 523(a)(3)(B) incorporates a duty-to-inquire approach to notice issues. *Id. See also In re Sam*, 894 F.2d 778, 781 (5th Cir.1990) (observing that "[w]hen a creditor is aware of the pendency of bankruptcy proceedings, the imposition of duty on the part of the creditor to make an inquiry to determine the fate of the first meeting of creditors, and to consult Bankruptcy Rule 4007(c) and calculate the bar date is not so burdensome as to outweigh the need for expeditious administration of bankruptcy cases.").

The Ninth Circuit has held that an unscheduled creditor, whose attorney had received notice two-months before the bar date, cannot file an untimely nondischargeability complaint in a Chapter 7 proceeding. *In re Price*, 871 F.2d 97, 97–98 (9th Cir. 1989). The Court of Appeals found that actual notice of the bankruptcy proceeding provided to the creditor's counsel in time to file a complaint constituted sufficient notice to the creditor within the meaning of Bankr.R. 4007(c). *Id.* at 99.

In another Ninth Circuit case ruling on an identical issue, the Court of Appeals found that notice of the bankruptcy proceedings received seven-days before the bar date provided insufficient notice. *In re DeWalt*, 961 F.2d 848, 851 (9th Cir.1992). The court noted that, in these circumstances, a creditor's actual knowledge of the bankruptcy proceeding is not an adequate substitute for notice of the creditors' meeting and bar date. *Id.* The court opined that, as a general rule, the creditor should receive this knowledge at least thirty-days before the bar date. *Id.*[7]

---

6. This section provides the following:
   [I]f such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.
   11 U.S.C. § 523(a)(3)(B).

7. The *Dewalt* Court noted that, depending on the circumstances, this thirty-day notice provision may be modified:
   Even 30 days notice may not be enough if truly extraordinary circumstances are presented, as when an unsophisticated creditor, not represented by counsel, receives only the most sketchy notice that a bankruptcy has been filed. On the other hand, a somewhat lesser period may be sufficient where there is

In *In re Walker*, the Tenth Circuit held that the creditors' actual knowledge of debtor's Chapter 7 proceeding barred creditors from challenging dischargeability of their claim fifteen-months after the bar date. 927 F.2d 1138 (10th Cir.1991). The court found that the creditors had actual knowledge of the debtor's bankruptcy six-weeks before the bar date. *Id.* at 1145. Moreover, because section 523(a)(3)(B) "explicitly places a burden on creditors with knowledge of bankruptcy proceedings to act to protect their rights," the creditors had no "right to assume receipt of further notice." *Id.* (quotations omitted). The court concluded that the six-week period constituted "ample time" for the creditors to file a timely nondischargeability complaint. *Id.*

Finally, the Eleventh Circuit addressed this issue. In *In re Alton*, 837 F.2d 457 (11th Cir.1988), the court held that a creditor was not entitled to an extension of time to file a nondischargeability complaint where he received actual notice of debtor's Chapter 11 bankruptcy proceeding within three-weeks of debtor's bankruptcy filing. Although the court was "troubled" by the debtor's exclusion of the creditor from the creditors' list, the court concluded that "the dictates of the Code and [Bankruptcy] Rules are clear":

> The statutory language clearly contemplates that mere knowledge of a pending bankruptcy proceeding is sufficient to bar the claim of a creditor who took no

action, whether or not that creditor received official notice from the court of various pertinent dates. This furthers the bankruptcy policy of affording a "fresh start" to the debtor by preventing a creditor, who knew of a proceeding but who did not receive formal notification, from standing back, allowing the bankruptcy action to proceed without adjudication of his claim, and then asserting that the debt owed him is undischargeable.

*Id.* at 459–60. In reaching its result, the court relied on the "clear" dictates of the Code and Bankruptcy Rules that have been almost "universally" interpreted as imposing a mandatory bar date on courts. *Id.* at 459.

While this Circuit has not decided the question at issue, it has generally interpreted other Code filing dates strictly. In *In re Vertientes, Ltd.*, 845 F.2d 57 (3d Cir. 1988), the Court of Appeals upheld a bankruptcy court's conclusion that passage of a filing deadline barred a creditor from filing an untimely proof of claim. The court found that Bankr.Rules 3003(c)(3) [8] and 9006(b)(1) [9] do not provide a court with discretion to extend a filing deadline for equitable purposes. *Id.* at 60.

In *Taylor v. Freeland & Kronz*, 938 F.2d 420 (3d Cir.1991), the Court of Appeals held that, in the absence of an objection filed within thirty-days after the creditors' meeting, property claimed as exempt under section 522 will be considered exempt. The

---

> clear evidence the creditor has enough advance knowledge of the bar date to file the complaint or request an extension and has purposefully chosen to lie in wait rather than present its claim.

*DeWalt*, 961 F.2d at 851. As Dollinger was represented at the creditor's meeting, he had at least sixty-days notice of the bar date. Physical presence at a creditor's meeting is not "sketchy" within the *DeWalt* Court's meaning. In addition, none of these exceptions appear to be applicable here. As Dollinger was represented in the bankruptcy matter by counsel, the Court finds that Dollinger was or should have been familiar with bankruptcy law. Moreover, there was no evidence that the creditor intentionally refrained from asserting his claim.

**8.** This Bankr.R. provides in pertinent part: "The court shall fix and for cause shown may extend

the time within which proofs of claim or interest may be filed." Bankr.R. 3003(c)(3).

**9.** Bankr.R. 9006(b)(1) enumerates the general approach for enlargement of time:

> Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Bank.R. 9006(b)(1).

court noted in dicta that Bankr.R. 9006(b)(3) allows the court to enlarge filing deadlines only as the operative rule permits, which was section 522 in the *Taylor* case. *Id.* at 423. In so doing, the court noted that "[t]he statute and rule establish a strict procedure for objections to claimed exemptions. Their import is clear and they admit of no exception." *Id.*

The Third Circuit has reaffirmed its literal reading of the Bankruptcy Rules on other occasions. In *Chrysler Motors Corp. v. Schneiderman*, 940 F.2d 911 (3rd Cir.1991), the Court of Appeals acknowledged the purposes of the Code and Bankruptcy Rules in refusing to permit a late filing:

> [T]he time limits of the statute and bankruptcy rule "serve the dual purposes of finality and certainty. In the bankruptcy context, the need for finality and certainty is especially acute." While we recognized that our result could grant a debtor an "undeserved windfall" we pointed out "[t]hat is true on enforcement of all procedural rules."

*Id.* at 914 (citations omitted).

Based upon the weight of authority, this Court concludes that Dollinger's presence at the creditors' meeting comprised "actual knowledge" within the meaning of section 523(a)(3)(B). As a result, he is bound by the automatic dischargeability scheme provided in Code section 523(c) and Bankr.R. 4007(c). That Dollinger failed to receive the notices specified in Bankr.Rules 4007(c) and 2002 is of no consequence under the Code. Unlike the mere seven-days' notice that the creditor received in *DeWalt*, Dollinger had actual knowledge two-months before the bar date. Even if the bar date were scheduled from the original date of the first creditors' meeting, Dollinger would still have had knowledge fifty-days before the bar date. Dollinger's actual knowledge imposed a duty-to-inquire, which

he failed to satisfy. This failure, coupled with Dollinger's possession of actual knowledge, is fatal to his late-filed complaint.

### C. *The Timing of Poskanzer's Objection*

Dollinger claims that Poskanzer's objection was untimely. In making this argument, Dollinger notes that a statute of limitations defense must be plead in an answer to the complaint. Fed.R.Civ.P. 8(c). By equating the bar date provided in the Code with a statute of limitations, Dollinger asserts that Poskanzer's failure to assert the bar date defense in his answer also constitutes a waiver. In making this assertion, Dollinger relies on a Ninth Circuit Bankruptcy Appellate Panel decision. *In re Santos*, 112 B.R. 1001, 1008 (9th Cir. BAP 1990); *see also In re Clay*, 64 B.R. 313 (Bkrtcy.N.D.Ga.1986) (holding that failure to plead the bar date defense constitutes a waiver).

In *Santos*, the bankruptcy court had dismissed the creditor's nondischargeability complaint and waiver argument where the debtor had raised the bar date-defense one-day before trial. *Santos*, 112 B.R. at 1006. The bankruptcy appellate panel ruled that, because dischargeability deadlines are not jurisdictional, the trial court must consider the creditor's waiver argument. *Id.* The bankruptcy appellate panel accordingly remanded the issue to the lower court with the instruction to balance certain equitable factors in determining whether a failure to timely raise a limitations defense should constitute a waiver. *Id.* at 1008.[10] The appellate panel acknowledged, however, that the ultimate determination of this issue "is left to the discretion of the trial court." *Id.*

The *Santos* view appears to rest, however, on reasoning which is incompatible with the "literal reading" approach followed by

---

**10.** These factors include the following:

1) the obviousness of the defense's availability, 2) the stage of the proceeding at which the defense is raised, 3) the time which has elapsed between the filing of the answer and the raising of the defense, 4) the amount of time and effort expended by the plaintiff in the case at the time the defense is raised, and

5) the prejudice resulting to the plaintiff which would result from allowing the defense to be asserted.

*Santos*, 112 B.R. at 1008 (citing *In re Kleinoeder*, 54 B.R. 33, 35 (Bkrtcy.N.D.OH 1985)). The Appellate Court added that other case-specific equitable factors may be considered. *Id.*

this Circuit. *See Schneiderman,* 940 F.2d at 914; *Freeland & Kronz,* 938 F.2d at 423; *Vertientes,* 845 F.2d at 60. More specifically, the literal phrasing and legislative history of Bankr.R. 4007(c) suggest that the bar dates are jurisdictional. The *Santos* court conceded this much: "[T]his legislative history implies that the bankruptcy court, the only court with jurisdiction over such matters, will be powerless to act upon dischargeability questions if the complaint is not timely followed." *Santos,* 112 B.R. at 1005. Nevertheless, the *Santos* court, largely ignoring this "legislative history," based its interpretation of Bankr.R. 4007(c) on the policies which the Code was designed to further. *Id.* Most notably, the *Santos* court sought to avoid certain consequences stemming from a ruling that the time bar provisions are jurisdictional. These perceived consequences feared by the *Santos* court include a "total preclusion" of a court's equitable powers to adjust bar date limits and a debtor's ability to collaterally attack an untimely nondischargeability complaint at any time. *Id.* at 1005–06. The *Santos* court feared that these consequences would undermine the Code's policy of promoting "prompt administration of bankruptcy estates." *Id.* at 1006.

This policy view is not only inconsistent with this Circuit's approach to interpretation of the Code, but it is also unpersuasive. Even under a jurisdictional view, a court possesses discretion to consider equitable-like factors. For example, a court must still determine whether a creditor received adequate notice under Bankr.Rules 4007(c) and 2002 or possessed sufficient knowledge under section 523(a)(3)(B) to be bound by the Code's automatic dischargeability scheme. And the debtor's interest in discharging his debt as quickly as possible alleviates the *Santos* court's concern for unlimited collateral attack. This interest will encourage prompt assertion of the bar date-defense, despite its unlimited post-answer availability. This Court accordingly rejects the *Santos* approach in favor of the jurisdictional view.

A series of other cases, addressing arguments similar to the ones before this Court,

have held likewise—that the bar date is a jurisdictional requirement, which cannot be waived. *In re Ezell,* 116 B.R. 556, 557 (Bkrtcy.N.D.Ohio 1990); *In re Booth,* 103 B.R. 800 (Bkrtcy.S.D.Miss.1989); *In re American Sports Innovations,* 105 B.R. 614, 616 (Bkrtcy.W.D.Wash.1989); *In re Kirsch,* 65 B.R. 297 (Bkrtcy.N.D.Ill.1986); *In re Krause,* 114 B.R. 582, 605 (Bkrtcy. N.D.Ind.1988). This Court also finds that another bankruptcy court has expressly rejected the holding in *Santos. In re Barley,* 130 B.R. 66 (Bkrtcy.N.D.Ind.1991).

In *Barley,* the debtor "knowingly and purposely" omitted the creditor from the creditors' schedule. *Barley,* 130 B.R. at 68. When the creditor obtained knowledge of the proceedings, the debtor assured the creditor that they had "no reason to participate in the proceeding" because the debtor would continue to honor their debt. *Id.* When the bar date passed and debtor stopped making payments, the creditor filed a nondischargeability complaint. *Id.*

The debtor in *Barley* never raised the untimeliness defense, however. *Id.* Nevertheless, in dismissing creditor's waiver argument, the court established that the time limits for dischargeability are jurisdictional. *Id.* at 69. Accordingly, a creditor must act within the time limits set by the Code or his cause of action is lost, and the debtor's obligation is extinguished:

> The bankruptcy court is powerless to extend the time for filing dischargeability complaints once it has expired and the debtor may not waive these limits by stipulating to the prosecution of an untimely complaint. It would be anomalous indeed for the plaintiffs to obtain, through inadvertence or other failure to specifically plead an affirmative defense, precisely the same relief the court could not properly give, had they requested it directly, and which the debtor could not knowingly consent to. The logical conclusion is that the lapse of time for filing dischargeability complaints extinguishes the cause of action.

*Id.*

In *Kirsch,* the debtor answered the complaint, proceeded through the pretrial process, sat through trial and even received a verdict against it without raising the de-

fense. 65 B.R. at 301. In vacating the verdict against the creditor, the bankruptcy court ruled that it was "powerless to do anything else." *Id.* at 302. The court flatly ruled that "there can be no waiver," in part, because dischargeability law should be strictly construed against the creditor to promote the debtor's fresh start. *Id.* While this position can be admittedly harsh, it is one mandated by the Code. *Booth,* 103 B.R. at 802.

The bankruptcy court's holdings in *Barley* and *Kirsch* comport with the general principle, recognized by the Courts of Appeal, that courts have limited discretion to extend the bar date beyond the period stipulated in the Bankruptcy Rules. *See Alton,* 837 F.2d at 459; *In re Hill,* 811 F.2d 484, 847 (9th Cir.1987).

And this view is consonant with the general principles enumerated in the Third Circuit's *Schneiderman* and *Freeland & Kronz* decisions. These principles include reading the Code literally to promote its "dual purposes of finality and certainty." *Schneiderman,* 940 F.2d at 914; *Freeland & Kronz,* 938 F.2d at 425–26.[11]

D. *The Constitutionality of Code Section 523(a)(3)(B)'s Actual Knowledge Exception*

■ Dollinger challenges the validity of section 523(a)(3)(B)'s actual knowledge exception to extending the bar date because of lack of notice. More specifically, Dollinger alleges that, by permitting the creditor's actual knowledge to serve as a substitute for the formal notice specified in Bankr.R. 4007(c), the Code and Bankruptcy Rules deprive Dollinger of equal protection and due process. In support of his constitutional challenge, Dollinger seeks sanctuary in a Third Circuit and various Supreme Court cases. The Court finds the authority cited in these cases inapposite and of no constitutional refuge to Dollinger.

Dollinger relies on *In re Harbor Tank Storage Co.,* 385 F.2d 111 (3d Cir.1967). In that case, the Third Circuit held that where a creditor was not sent notices as required under the Bankruptcy Act (the "Act"), the creditor had "an absolute right to file a claim *nunc pro tunc* in the proceedings after the passage of the bar date." *Id.* at 111. In *Harbor Tank,* the creditor had actual knowledge of the bankruptcy proceedings, but did not receive notice of the bar date. *Id.* at 112. Dollinger relies on *Harbor Tank* for the proposition that a creditor must receive notice before it can be barred from bringing a nondischargeability complaint. *Id.* at 115.[12]

While *Harbor Tank* has never been overruled, that decision arose under the Chap-

**11.** Another approach acknowledges that Bankr.R. 4007(c) may be jurisdictional, but still measures the equities in permitting a debtor to file a tardy dischargeability defense. *Burger King Corp. v. B–K of Kansas, Inc.,* 73 B.R. 671, 674–75 (D.Kan.1987). The Court notes the potential incompatibility of these approaches, however. Generally, if the bar date is jurisdictional, the Court lacks the discretion to relax it for equitable reasons. The Court notes that, even if this Court were tempted to rely on equitable principles, Poskanzer's behavior does not necessarily compel their application. Poskanzer raised his objection earlier than the debtor in *Kirsch.* Poskanzer's tardiness may well be attributable to his belated-acquisition of counsel. Moreover, the record does not indicate that Poskanzer behaved as surreptitiously as the debtor in *Barley.* If equity did not intervene to save the creditors in *Kirsch* and *Barley,* it should not intervene now.

**12.** The *Harbor Tank* court posited:

> Although notice by publication may be deemed to satisfy the requirements of the Act in some situations, certainly such notice is insufficient where, as here, the trustee knows both the existence and address of a creditor. And the fact that a creditor knows of the initiation of reorganization proceedings does not of itself place a burden on the creditor to file an appearance or claim in the proceeding before receiving notice to do so: a creditor has every right to assume that he will be sent all notices to which he is entitled under the Act.

*Harbor Tank,* 385 F.2d at 115.

Dollinger also directs the Court's attention to *Decker v. Roes,* 32 B.R. 385 (D.C.N.J.1983), a case citing *Harbor Tank* for the same proposition:

> In the bankruptcy field, the practice is to issue orders setting specific dates for taking particular steps, but this is all on the assumption that copies of the notice of the order will go out to known creditors long enough before the various deadlines to provide reasonable, due process time period to take the required steps.

*Id.* at 387.

ter X of the Bankruptcy Act of 1898 (the "Act"), 11 U.S.C. §§ 501–676. Under the Act, the bankruptcy judge's discretion established the bar date. *Sam*, 894 F.2d at 781. As a result, courts found imposition of a duty on a creditor to inquire continually into all "possible court orders" too burdensome. *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 297, 73 S.Ct. 299, 301, 97 L.Ed. 333, *motion to mod. den.* 345 U.S. 901, 73 S.Ct. 639, 97 L.Ed. 1339 (1953).

The rationale upon which *Harbor Storage* rests has been obviated by passage of the Bankruptcy Reform Act of 1978 (the "Code"), however. Under the Code, bar dates are not discretionary; to the contrary, Bankr.R. 4007(c) obliges that the bar date fall sixty-days from the creditors' meeting. Once Dollinger discovered Poskanzer's bankruptcy petition, he had only to inquire as to when the creditors' meeting would be held. Dollinger's presence at the creditors' meeting demonstrated that Dollinger had satisfied the least-obvious inquiry. At that point, he only had to consult Bankr.R. 4007(c) to know when his nondischargeability claim would be barred.[13] Accordingly, the principles provided by *Harbor Tank* do not help Dollinger.

Dollinger also directs the Court's attention to a "trilogy" of Supreme Court notice decisions: *Tulsa Professional Collection Srvs., Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The basic principle underlying these cases was first established in *Mullane:* "[due process requires] notice reasonably calculated, under all circum-

stances, to apprise [one] of the pendency of the action and afford [one] an opportunity to present objections." *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657. Dollinger's knowledge of the bankruptcy proceedings and, especially, his presence at the creditors' meeting gave him sufficient notice of the pendency of an action. Such notice is all that section 523(a)(3)(B) requires.

Based on Dollinger's presence at the creditors' meeting, he received such notice at least two-months before the bar date. This provided him with ample opportunity to present his objections. Even if Dollinger did not wish to file his nondischargeability complaint, he could have filed for an extension under Bankr.R. 4007(c).

In confronting a creditor in a similar posture to Dollinger's, the Eleventh Circuit observed:

> If [the creditor], once warned of the bankruptcy proceeding, had made minimal effort to determine the date of the filing of the petition, he would have realized the outside dates for filing his complaint contesting the dischargeability of his claim or for a motion to extend such time. Instead, [the creditor] made no such effort and cannot now properly complain of the consequences of his action.

*Alton*, 837 F.2d at 457.

Under these circumstances, the notice requirements provided in Bankr.R. 4007(c) and section 523(a)(3)(B) comport with constitutional due process. Moreover, compliance with the notice provisions in the Bankruptcy Rules was a mere technical requirement not mandated by due process principles. *See also Sam*, 894 F.2d at 782 (noting that "technical compliance with the thirty-day notice requirement of Bankruptcy Rule 4007(c) was not necessary in order

---

**13.** Dollinger's reliance on *City of New York* is misguided for the same reasons. The principles supporting the *Harbor Tank* decision also sustain the *City of New York* decision. *Decker v. Roes*, 32 B.R. 385 (D.C.N.J.1983). *City of New York* involved a railroad reorganization under section 77 of the Act. Most notably, the Court ruled that the "statutory command for notice" demands a "reasonable opportunity to be heard." *City of New York*, 344 U.S. at 297, 73 S.Ct. at 301. As a result, the Court held that

publication of a bar notice in newspapers is not a reasonable substitute for notice by mail. *Id.* But once again, this decision arose under the Act. Poskanzer's bankruptcy proceeds under the Code. Unlike the Act, the Code delineates its deadlines clearly. With knowledge of the creditor's meeting, a creditor could easily calculate the bar date. Dollinger's presence at the creditor's meeting indicates Dollinger possessed the requisite knowledge.

to comply with constitutional due process.").

In *Mennonite,* the Supreme Court struck down a state tax sale statute that provided for publication and limited mailed notice. *Mennonite,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180. In so doing, the Supreme Court held that notice by mail or other means *reasonably calculated to insure actual* notice is a minimal due process requirement. *Id.* at 799–800, 103 S.Ct. at 2712.

The Supreme Court's decision in *Tulsa Professional* is consistent with and elaborates upon its earlier *Mennonite* decision. In *Tulsa Professional,* the Supreme Court held that due process requires actual notice to reasonably ascertainable creditors of an estate that a nonclaim statute had begun to run. 485 U.S. at 478, 108 S.Ct. at 1341. Under the state statute's nonclaim provision, creditors' claims against the estate would be barred unless received within two-months of the commencement of probate proceedings. *Id.* at 480–81, 108 S.Ct. at 1342. The statute provided that creditors should receive publication notice of the probate proceeding's commencement. *Id.,* 485 U.S. at 480–81, 108 S.Ct. at 1342. In addressing a challenge to this statute, the Court found that notice by publication does not satisfy due process requirements; rather, due process requires notice by mail or other means as certain to ensure actual notice. *Id.* at 490–91, 108 S.Ct. at 1348.

This Court acknowledges that the due process principles from *Tulsa Professional* and *Mennonite* are not limited to probate proceedings. In *Tulsa Professional,* the Supreme Court specifically noted the transcendental nature of its holding, by observing that "we also have required actual notice in bankruptcy proceedings." *Tulsa Professionals,* 485 U.S. at 491, 108 S.Ct. at 1348. Admittedly, these cases address the due process issues presented by use of publication-notice in place of notice by mail. But, the propriety of publication-notice is not before this Court. The due process concerns raised here are whether due process permits the Code to dispense with notice by mail where a creditor possessed actual knowledge of the proceeding in sufficient time to respond.

Even assuming the relevance of the *Tulsa Professional, Mennonite* and *Mullane* holdings, the Court finds that the system for discharging claims provided by the Code and Bankruptcy Rules satisfies the due process demands explicated in these cases.

The Court, for example, has provided that the reasonableness of a particular method of notice "depends on the particular circumstances." *Id.* 485 U.S. at 484, 108 S.Ct. at 1344. Unlike the statute in *Tulsa Professional,* the Code requires that a creditor generally cannot have his claim barred without receiving notice from the clerk by mail. Bankr.R. 2002(a). Publication-notice may be used as a supplement to notice by mail under the Code, but not as a substitute. Bankr.R. 2002(k). As demonstrated earlier, the Code dispenses with notice by mail only when the creditor has "actual knowledge of the case in time for ... timely filing." 11 U.S.C. § 523(a)(3)(B). The rationale supporting this exception to the notice by mail provision is that the Code and Bankruptcy Rules provide definitive deadlines and filing dates. Unlike the probate· statute in *Tulsa Professional* and the Act's provisions which established bar dates based on *ad hoc* decisions, the Code's bar date falls sixty-days after the creditors' meeting. If the creditor attends the creditors' meeting, the Code is sufficiently clear that the creditor can calculate the bar date without court assistance.

While due process infirmities may arise where the creditor receives actual knowledge in "very little time" for timely filing, such is not the case before the Court. *See DeWalt,* 961 F.2d at 851 (holding that creditors knowledge of bankruptcy proceeding gained seven-days before bar date was insufficient "time for ... timely filing" within the meaning of section 523(a)(3)(B)). Here, Dollinger was present at the creditors' meeting. The bar date would not fall until sixty-days later. He could have filed his nondischargeability complaint or filed for an extension. He did neither.

Nor does the *dicta* in *Mullane* as it pertains to chance notice assist Dollinger. The Supreme Court has warned that chance alone is a constitutionally deficient method of notice if it is the primary vehicle for notice. *Mullane*, 339 U.S. at 315, 70 S.Ct. at 658.[14] But the Code's notice provisions do not rely on chance alone; rather, the Code utilizes the possibility that a creditor may learn of a bankruptcy proceeding independent of notice. Unlike the notice schemes in *Mullane* and *Tulsa Professional*, the Code provides for notice by mail as the primary method of notice. As a result, a creditor will not be bound by the discharge scheme unless he gets notice by mail or acquires "actual knowledge" within section. 523(a)(3)(B)'s meaning.

The Supreme Court has also cautioned that personal service is required even where "sophisticated creditors" have "means at their disposal" to discover whether proceedings are going to be initiated. *Mennonite*, 462 U.S. at 799, 103 S.Ct. at 2713. The Court's reference applies even to those creditors who are "particularly resourceful" in discerning applicable deadlines under the relevant statutory scheme. *Id.*

But, a creditor need not be particularly resourceful under the Code to discern the bar date. They are more aptly characterized as particularly negligent if they do not discern the bar date. Moreover, in *Mennonite*, the Supreme Court's reference was to creditors who had the means to discover the initiation of proceedings. It was not referring to creditors who had already discovered bankruptcy proceedings. It may be unconstitutional to bind an unnoticed creditor to the Code's dischargeability scheme simply because he has the ability to discover the proceedings and discern its deadlines. Here, however, the Court confronts a creditor who had knowledge of and participated in the bankruptcy proceedings. Clearly, the creditor's posture in the instant case presents a situation wholly different from the one addressed by the Supreme Court in *Mennonite*. As a result, this argument also fails.

## CONCLUSION

For the reasons stated above, this Court will affirm the decision of the bankruptcy court.

An appropriate order is attached.

## ORDER

For the reasons set forth in the Court's Opinion filed herewith,

It is on this 13th day of October, 1992,

ORDERED that the decision by the Honorable William F. Tuohey of the United States Bankruptcy Court is affirmed.

---

**14.** The *Mullane* Court articulated the following infirmity underlying notice by publication:

Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed. The chance of actual notice is further reduced when, as here the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention. In weighing its sufficiency on the basis of equivalence with actual notice, we are unable to regard this as more than a feint. 339 U.S. at 315, 70 S.Ct. at 658.