**In re David A. BIEDERMAN, Debtor.**

**David A. BIEDERMAN, Debtor on Behalf of CHESTER & BIEDERMAN, Esqs., a Partnership in Dissolution and the Creditors, and Individually, Plaintiffs,**

**v.**

**OURY, DeCLEMENTE & MIZDOL, a Professional Corporation of New Jersey, Dennis J. Oury, Thomas A. DeClemente and Bonnie J. Mizdol, jointly and severally and Thomas A. DeClemente, Individually, Defendants/Third–Party Plaintiffs**

**v.**

**Robert H. CHESTER, on Behalf of CHESTER & BIEDERMAN, Esqs., a partnership in dissolution and the Creditors, and Individually, Third–Party Defendants.**

Bankruptcy No. 91–22500 (NLW).

Adv. No. 92–2055 (NLW).

United States Bankruptcy Court, D. New Jersey.

April 8, 1994.

David A. Biederman, Secaucus, NJ, Oury, Mizdol & Brovarone, P.C., Fort Lee, NJ, Thomas A. DeClemente, DeClemente & Terlizzi, Lyndhurst, NJ, for defendants/third-party plaintiffs.

Michael E. Holt, Law Firm of Charles M. Forman, Newark, NJ, for trustee.

## DECISION

NOVALYN L. WINFIELD, Bankruptcy Judge.

Presently before the Court is Thomas A. DeClemente's ("DeClemente") motion to amend his answer, counterclaim and third-party complaint to include an objection to the dischargeability of his claim.

This court has considered oral argument by counsel for the parties, the pleadings and legal memoranda submitted, and makes the following findings of facts and conclusions of law as required by Fed.R.Bankr.P. 7052. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J), and this court has jurisdiction in accordance with 28 U.S.C. § 1334, and the Standing Order of Reference by the District Court of New Jersey, dated July 23, 1984.

## STATEMENT OF FACTS

On or about November 20, 1989, the law firms of Chester & Biederman ("Biederman firm"), Thomas A. DeClemente, P.C. and Oury & Mizdol, P.C. merged to form the new firm of Oury, DeClemente, Mizdol & Biederman, P.C. ("ODM & B"). Apparently the merger was unsuccessful. Oury, DeClemente and Mizdol, P.C. ("OD & M") became the successor entity to ODM & B, and there-

after Oury & Mizdol separated from the OD & M firm.

On April 19, 1991, the debtor filed a Chapter 11 petition for reorganization. In January, 1992, the debtor, individually and on behalf of the former Biederman firm, filed an adversary proceeding against OD & M, Dennis J. Oury, Thomas A. DeClemente, and Bonnie A. Mizdol, jointly and severally and against DeClemente individually to "recover money and property" in connection with the failed merger of the law firms. The complaint alleges that the defendants owe $50,000 to the debtor for loans he made to the merged firm, ODM & B. It also alleges a separate claim against DeClemente individually for defamation.

On February 28, 1992, Oury, Mizdol & Brovarone, P.C. ("OMB") and DeClemente, Topolski & Terlizzi, Esqs. ("DTT")[1] filed an answer on behalf of the ODM firm, and Oury, DeClemente, and Mizdol individually. As separate defenses the defendants asserted *inter alia*, tortious misrepresentation of material facts, willful misrepresentation of material facts, fraudulent inducement to enter into the merger, and unclean hands on the part of the debtor [Defendants' February 26, 1992 answer, p. 4–5]. The answer also contained a counterclaim and third-party complaint which alleged that the debtor, together with his former partner, Robert H. Chester ("Chester") misrepresented the number of active client files that would be contributed to the merged firm, failed to disclose Chester's mental and emotional state, submitted false financial information, and fraudulently converted the firm's accounts receivable. The debtor filed his answer to the counterclaim on March 10, 1992, denying all of the essential elements of the counterclaim, and asserting various affirmative defenses. Over the next few months the matter was readied for trial, which was scheduled for October 14, 1992 and adjourned to January 8, 1993 and January 25, 1993.

While the adversary proceeding was pending, the Official Unsecured Creditors' Committee ("Creditors' Committee") filed a motion to convert the Chapter 11 case to a Chapter 7 case, returnable on October 26, 1992. Notice to creditors of the motion and its return date was mailed by the clerk's office. The certification of service identifies DeClemente as a party to whom notice was sent. His address is listed on the clerk's office certification of service as 1050 Wall St. W., Suite 330, Lyndhurst, N.J. 07071–3615. DeClemente acknowledges receipt of this notice. [DeClemente February 26, 1993 letter, p. 1].

On October 5, 1992 DeClemente's motion to dismiss the adversary proceeding complaint came on for hearing. The court recorder's log sheet reflects that the debtor, creditors' committee counsel, and DeClemente were present at the hearing.[2] At the hearing, counsel to the Creditors' Committee presented a consent order to convert the Chapter 11 case to a Chapter 7 case. DeClemente concedes that he orally agreed to the conversion of the case at this hearing [DeClemente May 14, 1993 brief, p. 2].

Because conversion to Chapter 7 was achieved by means of the consent order, by letter dated October 8, 1992, the Creditors' Committee withdrew its motion to convert. DeClemente is listed as a recipient of a copy of that letter. DeClemente is also identified as a noticed party on a letter by counsel for the Creditors' Committee which transmitted to the debtor a copy of the conformed consent order converting the case to a Chapter 7 case.

Thereafter, on October 23, 1992, the clerk's office mailed a "Notice of Commencement of Case Under Chapter 7 of the Bankruptcy Code, Meeting of Creditors, and Fixing of Dates" ("Creditors' Notice") to all creditors. The certification of mailing filed by the clerk's office lists DeClemente among the creditors to whom notice was mailed. The certification indicates that notice was mailed to DeClemente at One Parker Plaza, Fort Lee, New Jersey 07025, and at 1050 Wall St.

---

1. The answer indicates OM & B's address as One Park Plaza, Fort Lee, New Jersey 07025, and DTT's address as 1050 Wall Street West—Suite 330, Lyndhurst, New Jersey 07071.

2. Letters dated February 25, 1993 to the court and February 24, 1993 to DeClemente by counsel for the Creditors' Committee also refer to DeClemente's court appearance on October 5, 1992.

W., Suite 330, Lyndhurst, New Jersey 07071–3615. The Creditors' Notice scheduled the meeting of creditors for November 12, 1992, and set January 11, 1993 as the bar date to file complaints to determine the dischargeability of any debt or to object to the debtor's discharge. DeClemente did not file an objection to the debtor's discharge or to the dischargeability of his debt by the bar date, January 11, 1993.

On January 8, 1993, at the first scheduled trial date, Oury advised the court that the parties were engaged in settlement negotiations and that DeClemente was opposed to such negotiations and wished to be heard in that regard. DeClemente was not able to be present at the first trial date. The court thus scheduled a settlement conference for January 25, 1993, at which time it heard DeClemente's objection to the proposed settlement.

On January 29, 1993 DeClemente filed a motion captioned "Motion to Permit the Late Filing of an Objection to a Chapter 7 Dissolution." DeClemente's certification in support of that motion indicates that the trustee was engaged in serious negotiations with Oury and Mizdol regarding settlement of the claims against ODM, and that DeClemente was "vigorously opposed to the matter being settled" and he further claims he was "not ... privy to those settlement negotiations." [DeClemente January 29, 1993 Certification, p. 2].

DeClemente's certification further alleges that he did not file a timely objection to discharge because he believed Oury and Mizdol would file an objection to discharge, and further believed that the "trial subsumed the issue as to our objections to the dissolution." [DeClemente January 29, 1993 Certification, p. 3]. Although it appears from this certification that DeClemente objects to the debtor's discharge pursuant to § 727(a)(3) and (4) [DeClemente January 29, 1993 Certification, p. 3–4], he did not assert an objection to the dischargeability of his debt pursuant to § 523(a)(2), (4), or (6) as part of the relief sought.

The court heard DeClemente's motion on March 1, 1993, at which time he vigorously opposed the proposed settlement and for the first time orally asserted a nondischargeability action against Biederman pursuant to § 523 [see also DeClemente May 4, 1993 brief, p. 4].

DeClemente submits that since his objection to Biederman's discharge is based on the same allegations of misrepresentation and fraudulent conversion of funds alleged in his counterclaim, he should be permitted to amend his counterclaim to include the objections to discharge.

Oury and Mizdol, individually, and as majority stockholders of OD & M agreed to a settlement of all their claims with the trustee. Further, the parties settled with the third-party defendant, Chester and the trustee abandoned all claims against DeClemente individually. The proposed settlement was noticed to creditors. The only objection to the settlement was filed by DeClemente. On April 13, 1993 the court approved the proposed settlement and overruled DeClemente's objection. As a consequence of the settlement among the other parties in the adversary proceeding, and the trustee's abandonment of his claims against DeClemente, this adversary proceeding is effectively terminated unless DeClemente's motion is granted and he is permitted to amend his counterclaim to include counts objecting to discharge or the dischargeability of his claims.

## DISCUSSION

A) *DeClemente's motion viewed as a request for an extension of time to object to the debtor's discharge or dischargeability of his debt*

Viewing DeClemente's motion as a request for an extension of time to either (i) object to the debtor's discharge, or (ii) object to the dischargeability of his claim, it is apparent that his request must be denied.

Pursuant to Fed.R.Bankr.P. 4004 a creditor must file a complaint objecting to the debtor's discharge no later than sixty (60) days following the first date set for the meeting of creditors. Similarly, Fed.R.Bankr.P. 4007(c) bars the filing of nondischargeability complaints more than sixty (60) days after

the first date set for the creditors meeting. Both rules provide creditors with an opportunity to request an extension of the deadline, which the court may grant after a hearing on notice, and for cause. However, pursuant to the rules, the request for extension of the deadline must be made before the time for objection has expired.[3]

■ Fed.R.Bankr.P. 9006, which treats the enlargement of time limitations contained in the rules, provides no assistance to a party that has missed the deadline contained in Rules 4004 and 4007. While Rule 9006(b)(1) does provide that enlargement of a time period may be sought on the basis that failure to timely act was attributable to excusable neglect, it cannot be utilized to extend the deadlines contained in rules 4004 or 4007. The rule explicitly provides in subsection (b)(3) that a court may enlarge the time for taking action under 4004(a) and 4007(c) "only to the extent and under the conditions stated in those rules."

■ Thus, as is readily apparent from a reading of the pertinent rules, a court has limited discretion to extend the deadlines for filing complaints objecting to the debtor's discharge, or the dischargeability of a creditor's claim and has no discretion for doing so if the request for extension is made after the deadline has expired. *In re Lane,* 37 B.R. 410, 414 (Bankr.E.D.Va.1984); *In re Klein,* 64 B.R. 372, 375–76 (Bankr.E.D.N.Y.1986); *In re Poskanzer,* 146 B.R. 125, 127 (D.N.J. 1992).

■ To the extent that DeClemente asserts that he was inadequately noticed, *Poskanzer* makes it clear that actual knowledge

"vitiates an inadequately noticed creditor's ability to file out of time." *Id.* at 128. Like the creditor in *Poskanzer,* DeClemente participated in the case and had actual knowledge of the case so as to impose upon him a duty to inquire about case deadlines. Indeed, DeClemente concedes that he was present at the hearing at which the consent order for conversion was presented to the court, and that he orally agreed to the conversion. Moreover, unlike the creditor in *Poskanzer* DeClemente was listed as a creditor, and received notices regarding the case. He acknowledges receiving the notice of the motion to convert which was mailed to the Lyndhurst, New Jersey address. According to the certification of mailing, the notice containing the bar dates was mailed to the very same address. A presumption arises that notice was received where the docket and file indicate that the notice was timely and accurately mailed to creditors. *In re Cresta,* 40 B.R. 953, 955 (Bankr.E.D.Pa.1984). "A mere allegation that the notice was not received is insufficient to rebut the presumption." *Id.; See also In re Rodolfy,* 150 B.R. 347, 349 (Bankr.M.D.Pa.1992). In light of the evidence that service of the Creditors' Notice was made to the proper address, DeClemente's bare assertion of non-receipt does not overcome the presumption.

■ Accordingly, even if the excusable neglect standard were applicable,[4] the facts before the court do not substantiate its application. DeClemente clearly had ample opportunity to avail himself of the opportunity to file a timely complaint or to timely request an extension of time for doing so.

---

**3.** Rule 4004(b) provides: "[T]he Motion *shall* be made before such time has expired." (emphasis supplied). Rule 4007(c) similarly provides: "[T]he motion *shall* be made before the time has expired." (emphasis supplied).

**4.** Without elaboration, DeClemente relies on *In re Peacock,* 14 B.R. 360 (Bankr.N.D.Ohio 1981), for the proposition that a court may grant an extension of time "for cause." However, *Peacock* was decided under the former Bankruptcy Rules 404 and 906 under which the court had the power to grant extensions of time after the expiration of the deadline if the court found that the filing was due to "excusable neglect." With the adoption of the new Rules of Bankruptcy

Procedure, effective August 1, 1983, the Court's prerogative to extend the time for filing complaints for discharge or dischargeability based on excusable neglect has been eliminated. *In re Lane,* 37 B.R. 410, 411–12 n. 1 (Bankr.E.D.Va. 1984) (citing April 25, 1983 Order of the United States Supreme Court). As Judge Buschman points out in *In re Klein,* 64 B.R. 372, 375 (Bankr.E.D.N.Y.1986):

It is clear that by prohibiting that which it formerly permitted, Congress intended to no longer subject the preeminent fresh start policy to the uncertainties of excusable neglect in failing to timely object to discharge of a claim. *Id.*

Thus, in light of the applicable law, to the extent DeClemente's motion can be construed as a request to extend the deadlines contained in Rules 4004 and 4007, it must be denied.

### B) *DeClemente's motion viewed as a request to amend the counterclaim*

For the reasons set forth at greater length below, the court concludes that if the motion is viewed as a request to amend the counterclaim to assert an objection to the debtor's discharge, it must be denied. However, the request to amend the complaint to add a § 523(a)(4) claim should be granted.

Divergent lines of case law have developed with respect to amendments to complaints which assert objections to discharge or dischargeability after the deadlines for objection have passed. One line of authority emphasizes the policy that underlies the Federal Rules of Civil Procedure, while the other line of authority emphasizes Bankruptcy Code policy considerations.

Under Federal Rule of Civil Procedure 15(a), as made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7015, "[a] party may amend his pleading [after a responsive pleading has been filed] only by leave of court or by written consent of the adverse party; and *leave shall be freely given when justice so requires.*" Fed. R.Civ.P. 15(a) (emphasis supplied). The test for relation back is set forth in Fed.R.Civ.P. 15(c) which provides in relevant part:

> [W]henever the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

"The inquiry should focus on the notice given by the general fact situation as set forth in the original pleadings." *In re Klein,* 31 B.R. 947, 950 (Bankr.E.D.N.Y.1983) (citations omitted). Thus, in *Klein,* on the debtor's motion for judgment on the pleadings the court permitted the creditor to amend its complaint objecting to discharge so as to set forth factual allegations with greater particularity, because it found that the original com-

plaint gave the debtor sufficient notice of the creditor's claims. *Id.* at 951.

The factors for consideration by the court to exercise its discretion to permit amendment have been stated by the United States Supreme Court in *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), 371 U.S. 178, 83 S.Ct. 227, as follows:

> In the absence of any apparent or declared reason, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Id.; Coventry v. U.S. Steel Corp.,* 856 F.2d 514, 519 (3d Cir.1988) (citing *Foman supra*)). *See also In re Hussain,* 54 B.R. 755, 758 (Bankr.E.D.N.Y.1985) ("Granting leave to amend is in keeping with the general policy of the Federal Rules of Civil Procedure that controversies should be decided on their merits and not on procedural technicalities." (citations omitted)).

In the bankruptcy context, some courts have focused on Fed.R.Civ.P. 15 and have allowed an amendment to a complaint after the bar date provided the amendment could be found to relate back to the grounds stated in the original complaint. *In re Hussain,* 54 B.R. at 759; *In re Klein,* 31 B.R. at 952; *In re Herrera,* 36 B.R. 693 (Bankr.D.Colo.1984); *In re Fondren,* 119 B.R. 101, 103–04 (Bankr. S.D.Miss.1990); *In re Tester,* 56 B.R. 208, 209 (W.D.Va.1985) on remand, 62 B.R. 486 (Bankr.W.D.Va.1986).

For instance, in *In re Hussain,* 54 B.R. at 756, the creditor filed a timely complaint seeking to bar the debtor's discharge pursuant to § 727(a) and to declare a debt nondischargeable pursuant to § 523(a)(2)(A). The debtor moved to dismiss the adversary proceeding on the grounds that the complaint lacked factual particularity and that the allegations merely restated the pertinent code provisions. The creditor cross-moved for leave to amend its complaint. To arrive at its determination the court considered that:

> [T]he purpose of a complaint is to give fair notice of the claim asserted to enable the

adverse party to prepare for trial by showing the type of case being commenced against it. This allows it to adequately prepare a defense to the allegations pleaded in the complaint. *Id.* at 758 (citing 2A Moore's Federal Practice, Paragraph 8.13 at 8–103 (2d ed. 1985)). The court found that although the original pleading was "imperfectly drawn," the complaint together with the counts enhancing it gave the debtor notice of the creditor's objections to discharge. As to the nondischargeability count, the court indicated that although the creditor's original complaint failed to set forth sufficient notice of the nature of the fraud, the count was specific in the general area of the alleged inducement to enter into a lease and the fraudulent representations upon which the creditor relied. Thus the court permitted the amendment as to the nondischargeability count to set forth in greater detail all of the facts. Notably, the court found that the debtor would not be prejudiced by granting the amendment since it had adequate notice of the charges asserted against him. *Id.* at 759.

In *In re Klein,* 31 B.R. at 949, a judgment creditor filed a complaint which sought denial of the debtor's discharge pursuant to § 727(a)(2), (3), (4) or, alternatively, nondischargeability of its claim pursuant to § 523(a)(2)(A) and (a)(2)(B). However, the creditor did not plead with sufficient particularity the claims based on fraudulent conduct in connection with a loan, and fraudulent misconduct with respect to the debtor's bankruptcy proceedings. In almost a "literal recitation of the bare statutory language," the creditor plead the claims pertaining to the debtor's failure to keep records and failure to provide the trustee with such records. The court found that a proposed amendment to add factual detail to the original defective pleading would not prejudice the debtor who had notice of the claims asserted against him in the original complaint.

In *In re Herrera,* 36 B.R. at 694, plaintiffs' original complaint alleged an action for nondischargeability pursuant to § 523(a)(6) on the grounds that defendants obtained plaintiffs' property through fraud and conversion by misrepresenting their intention to transfer stock to plaintiffs in exchange for property. After the deadline for filing objections to dischargeability passed, plaintiffs filed an amended complaint which sought to add a claim pursuant to § 523(a)(2)(A). To the existing factual averments in the complaint regarding the stock transfer, the plaintiffs sought to add allegations setting forth the defendants' concealment of assets and liabilities of the corporation as well as misuse of corporate funds. The court permitted the amendment and its relation back to the extent that the § 523(a)(2)(A) count rested on the existing allegation in the complaint as to intentional false representations regarding the transfer of corporate stock. The court reasoned that the cause of action was factually stated even though the plaintiff did not cite the Code section. *Id.* at 695. However, the court did not permit amendment of the complaint or its relation back insofar as the amendment sought to add allegations that the defendants fraudulently concealed or misused corporate assets because plaintiffs made no mention in their original complaint of those allegations, which "are [based on] a 'new ground' of fraud.'" *Id.*

In *In re Fondren,* 119 B.R. at 102, a customer who mistakenly issued a check which was cashed by the debtor filed a timely adversary proceeding alleging that the debt was nondischargeable pursuant to § 523(a)(2)(A). Although the complaint made no reference to a § 523(a)(6) cause of action, counsel for the creditor had informed debtor's counsel of the possible use of that section in the proceeding. *Id.* at 102. At trial, the court found there was no violation of § 523(a)(2)(A), and the creditor then moved to amend its complaint to include a § 523(a)(6) action although the bar date for filing nondischargeability complaints had passed. The court allowed the amendment and held that it should relate back to the date of the original complaint. The court reasoned:

Under the facts of this case, the allegations upon which the proposed amendment under section 523(a)(6) are based are the very same as those presented in the origi-

nal complaint which alleged a violation of section 523(a)(2).

*Id.* at 104.

Courts which follow a strict reading of the time deadlines for filing complaints objecting to the debtor's discharge under § 727(a) and § 523(a) have focused on the bankruptcy policy favoring the debtor's fresh start, as well as the general judicial policy favoring finality and certainty. As a consequence, they have not permitted the use of Fed.R.Civ.P. 15 to permit an amendment to assert an objection to discharge or dischargeability that would otherwise be untimely. As the court points out in *In re Ksenzowski,* 56 B.R. 819, 826–27 (Bankr.E.D.N.Y.1985), Congress recognized in enacting the Bankruptcy Code that: "[P]erhaps the most important element of the fresh start for a consumer debtor after bankruptcy is discharge. The discharge releases the debtor from his debts." (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 118, 128 (1977)). Further, the court noted that the:

> [r]elease of the honest, unfortunate, and insolvent debtor from the burden of his debts ... in the interest of his family and the general public, is one of the main, if not the most important objects of the [bankruptcy] law.

*Id.* at 827 (citations omitted). Accordingly, to further this underlying policy, the grounds for objecting to a debtor's discharge are few and carefully defined under § 727, and similarly the time for filing a complaint objecting to a discharge is deliberately short. *Id.*

Courts that focus on Bankruptcy policy considerations have held that additional or new grounds for objections may not be added by way of an amendment filed after the deadline for filing complaints objecting to discharge has passed. *Id.; In re Grant,* 45 B.R. 262, 264 (Bankr.D.Me.1984); *In re Sapru,* 127 B.R. 306, 318 (Bankr.E.D.N.Y.1991). As pointed out by 4 Collier on Bankruptcy, ¶ 727.14[4], at 727–98 to 727–101 (15th ed. 1991), permitting an amendment which brings in a new ground of objection after the time fixed for filing complaints objecting to discharge, runs contrary to the underlying purpose of Fed.R.Bankr.P. 4004(a). *Id.*

In *In re Grant,* 45 B.R. at 263, an insurance company filed a timely objection to the debtor's discharge pursuant to § 727 on the grounds that the debtor filed inaccurate schedules with an intent to hinder, delay and defraud creditors. The insurance company did not file a motion for an extension of time to object to the dischargeability of its debt. After the deadline passed, the insurance company sought to amend its original complaint to add an objection to the dischargeability of its debt under § 523(a)(6) on the grounds that the debtor was legally intoxicated at the time of the accident and willfully and maliciously injured the insured.

The insurance company argued that it did not seek to file a new complaint but rather it sought to amend its complaint. The court denied the creditor's request to amend its complaint because the new count for willful and malicious injury did not have sufficient identity with the original allegations. *Id.* at 264. In reaching its decision the court addressed the policy concerns that support a strict construction of limitations imposed by the bankruptcy code:

> The Court recognizes that leave to amend should be freely given when justice so requires ... Here, however, it would be unjust to allow the requested relief. There are strong policy reasons for imposing time limits on the filing of objections to a debtor's discharge ... [t]he Bankruptcy Code's discharge provision, is intended to provide the debtor with a "fresh start ..." To allow the debtor to be continually pursued by his creditors, "ad infinitum by a succession of amendments would be to sanction a form of slow torture" contrary to the spirit and purposes of the bankruptcy laws.

*Id.* (citations omitted).

*In re Sapru,* demonstrates how strictly courts have construed deadlines for objecting to discharge. 127 B.R. at 318. In *Sapru* the creditor filed a complaint pursuant to § 727 but did not include a nondischargeability action pursuant to § 523. The debtor was extremely uncooperative and refused to timely comply with repeated requests for discovery even after the court executed two orders to produce and denied two motions for an

order of protection. Nevertheless, it was irrelevant to the court that the creditor did not learn of the facts upon which it sought to amend its complaint until after expiration of the deadline to object to the dischargeability of its claim. The court noted that to permit the creditor to rely on allegations not contained in the complaint or an amended complaint would contradict the strict interpretation given to Fed.R.Bankr.P. 4004(a). *Id.* Thus the court denied an amendment objecting to the debtor's discharge although it was substantially similar to the original pleading because the creditor had not moved timely to amend its complaint under Fed.R.Bankr.P. 4004.

With respect to the matter before the court, the central issue is whether the discharge count and the nondischargeability count that DeClemente wishes to add to his counterclaim are sufficiently related to the matters originally pleaded so as to warrant relation back. As noted earlier, the focus must be on whether the facts set forth originally give sufficient notice of the wrong or conduct now sought to be alleged. *In re Klein,* 31 B.R. at 950.

A careful reading of DeClemente's pleadings reveals that he is inconsistent as to what relief he seeks by amendment. In his initial certification dated January 29, 1993, in support of his motion "to permit the late filing of an objection to a Chapter 7 dissolution," he asserts at paragraphs 6–7 that he should be permitted to file an objection due to alleged misrepresentations of the debtor that fall within the scope of Code §§ 727(a)(3) and (a)(4). However, in a later pleading he argues that he should be permitted to amend his counterclaim because the factual basis for an objection to the dischargeability of his claim pursuant to § 523(a)(4) is already stated in the counterclaim [DeClemente May 4, 1993 Letter Brief, p. 3–4].

Pursuant to §§ 727(a)(3) and (a)(4) the court shall grant the debtor a discharge unless:

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case:

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

■ The Court finds that the discharge action which DeClemente seeks to add has no nexus with the facts pleaded in the original counterclaim. A review of DeClemente's counterclaim reveals that it alleges no facts which support a contention that the debtor should be denied a discharge due to violations of §§ 727(a)(3) and (a)(4) of the Bankruptcy Code. DeClemente's counterclaim does not allege in any fashion that the debtor concealed or destroyed his financial records. Nor does the counterclaim set forth any facts that suggest that in connection with the bankruptcy case the debtor made a false oath or claim or withheld information from the trustee. Thus DeClemente's counterclaim did not put the debtor on notice that DeClemente objected to Biederman's discharge. Because such an action bears no relationship to the general fact situation which underlies the counterclaim, there can be no relation back. Further, since the time to file an objection to discharge has long since expired, there is no basis to permit amendment of the counterclaim to allege such a claim.

■ With respect to the amendment of the counterclaim to add a nondischargeability claim under 523(a)(4), DeClemente is on much firmer ground. Section 523(a)(4) provides that a discharge does not discharge an individual debtor from any debt:

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

The counterclaim asserts factual allegations that the debtor and Chester provided ODM & B with false information, fraudulently converted monies that they received in a fiduciary capacity, and made misrepresentations about the nature of the former Biederman law practice. It must be remembered that the debtor commenced the underlying action, asserting that the firm and the individual partners should compensate him for loans made to the firm. There was also a separate claim for defamation against DeClemente. The counterclaim was part of the opposition to the relief sought by the debtor. The allegations of the counterclaim can readily be said to have put the debtor on notice regarding the alleged fraud on which DeClemente seeks to base his nondischargeability amendment. In *In re Krank,* 84 B.R. 372, 376 (Bankr.E.D.Pa.1988), the court addressed the issue of whether a debtor would suffer prejudice by permitting a plaintiff to amend its complaint to add a cause of action under § 523(a)(4) approximately seventeen months after the complaint for denial of discharge under § 727 was filed. After examination of the complaint, the court found that the amendment arose from the same attorney-client relationship on which the objection to discharge was grounded. Finding an identity of issues, the court determined that no great prejudice existed.

In the instant matter, DeClemente's amendment to assert a § 523(a)(4) claim is based on the very same facts that form the basis for the counterclaim. Thus, fair notice of the fact situation on which the proposed amendment is based has been given so that it is appropriate to permit relation back. Moreover, in light of the identity of issues, and the fact that the debtor is the party who initially put the nature of the relationship of the parties in issue by commencing the litigation for recovery of funds and defamation, he can certainly not be said to be prejudiced by the consequences of that which he set in motion.

## CONCLUSION

For the reasons set forth above the court (i) denies the motion for extension of time to file a complaint objecting to the debtor's discharge or the dischargeability of the creditor's claim, (ii) denies the motion to amend the counterclaim to assert an objection to discharge, but (iii) grants the motion to amend the counterclaim to assert nondischargeability of DeClemente's claim pursuant to § 523(a)(4).