In re Robert Michael POLAND, Debtor.

Theresa KRAMER, Plaintiff,

v.

Robert Michael POLAND, Defendant.

Bankruptcy No. 97–5356–BKC–3F7.
Adversary No. 97–348.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

June 22, 1998.

P. Campbell Ford, Jacksonville, FL, for Plaintiff.

James A. Fischette, Jacksonville, FL, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Proceeding came before the Court for trial on March 25, 1998 upon a Complaint Objecting to Discharge pursuant to 11 U.S.C. § 727(a)(4)(A) and (a)(5). Based upon the evidence presented and the argument of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

On July 17, 1997, Robert Michael Poland ("Defendant") filed a voluntary Chapter 7 Petition with the Court. Defendant filed his Schedules and Statement of Financial Affairs on July 30, 1997. (Pl.'s Ex. 4). On Schedule A, Defendant listed his interest in commercial real estate located at 1510 and 1522 Penman Road, Jacksonville Beach, Florida 32250, as $418,000. (Pl.'s Ex. 4). Previously, on June 21, 1997, Defendant filled out a personal financial statement with SouthTrust Bank, listing the value of the commercial real estate at $540,000 (Pl.'s Ex. 5). On Schedule B, Defendant listed household furnishings and supplies with a value of $2,000 (Pl.'s Ex. 4), which he valued on the personal financial statement in June of 1997 at $10,000 (Pl.'s Ex. 5). On January 14, 1998, the Court approved an agreement between Defendant and the Chapter 7 Trustee, in which Defendant was to pay the Trustee $3,000 to repurchase his tangible personal property from the Estate. Furthermore, on Schedule B, Defendant listed 500 shares of North Beaches Pharmacy, Inc. stock with a zero value. (Pl.'s Ex. 4). On his 1997 Florida Intangible Tax Return, Defendant listed his 500 shares of North Beaches Pharmacy, Inc. stock with a value of $75,155.00. (Pl.'s Ex. 3).

On October 21, 1997, Plaintiff filed a three-count Complaint Objecting to Discharge. (Doc. 1). Count I alleged a transfer of assets to Defendant's wife within one year of filing; the parties stipulated to the dismissal of Count I prior to trial. (*See*, Plaintiff, Theresa Kramer's Trial Memorandum at ¶ 3, Doc. 18). Pursuant to 11 U.S.C. § 727(a)(4)(A), Count II contained allegations of false oaths in Defendant's Schedules. (Doc. 1). Pursuant to 11 U.S.C. § 727(a)(5), Count III alleged that Defendant failed to satisfactorily explain a loss of assets or deficiency of assets to meet his liabilities. (Doc. 1).

Defendant filed an Answer. (Doc. 5). At trial, Defendant did not appear, but was represented by counsel. Defendant's absence resulted in post-trial motions for sanctions filed by Plaintiff. Additional motions were still pending at the conclusion of trial.

At trial, due to Defendant's absence, Plaintiff entered into evidence Defendant's deposition testimony. Along with documentary evidence, this constituted the whole of Plaintiff's case. Defendant put on two witnesses: Pettit, a real estate appraiser, hired by the Chapter 7 Trustee to appraise the commercial real estate and Bony, who was hired by the Chapter 7 Trustee to perform the inventory and appraisal of Defendant's personal property.

### CONCLUSIONS OF LAW

■ The Court must resolve several preliminary issues prior to ruling on the two remaining counts in the Complaint. First, prior to trial, Defendant filed a Motion for Sanctions against Plaintiff and Plaintiff's Attorneys, which alleged that the Complaint was brought for an improper purpose and/or harassment and that the factual allegations did not have evidentiary support (Doc. 13). Having had the experience of the trial behind, the Court finds it appropriate to deny the Motion for Sanctions against Plaintiff and Plaintiff's Attorney as it does not appear that the Complaint was brought for an improper purpose, including harassment, and that the Plaintiff, at trial, did provide evidentiary support for the factual allegations set forth in the Complaint.

At trial, although the Court announced that Defendant had the right to submit a Motion for Sanctions against Plaintiff for fail-

ure to be fully prepared for trial and for failure to subpoena her witnesses, namely the Defendant, the Court based this ruling on the fact that the trial would be continued and that Defendant would incur additional attorney's fees due to the continuance. As Defendant's counsel announced that he did not wish a continuance, the Court deems that the Motion for Sanctions was waived at that time. Furthermore, at no point subsequent to trial did Defendant submit a Motion for Sanctions.[1] Therefore, no damages having been alleged or proven, the Court deems that the issue is moot.

Plaintiff also filed a Motion for Entry of Default Judgment, Motion for Directed Verdict, and Motion for Sanctions (Doc. 27), in which Plaintiff alleged that Defendant's failure to appear at trial was in violation of Federal Rule of Bankruptcy Procedure 4002(2), which entitled Plaintiff to the entry of a default judgment. Defendant responded. (Doc. 42). Defendant filed a Motion to Strike Plaintiff's Motion for Entry of Default Judgment, Motion for Directed Verdict and Motion for Sanctions (Doc. 30), to which Plaintiff responded. (Docs. 33 and 39).

Federal Rule of Bankruptcy Procedure 4002(2) includes as one of the duties of the debtor to "attend the hearing on a complaint objecting to discharge and testify, if called as a witness." Fed.R.Bankr.P. 4002(2) (1998). In *MacPherson v. Shaheen (In re MacPherson)*, 129 B.R. 259, 261 (M.D.Fla.1991), the court held that a subpoena was unnecessary to impose the duty on a debtor to testify in a hearing on an objection to discharge, as Federal Rule of Bankruptcy Procedure 4002(2) required the debtor to do so. However, the court insinuated that the duty was not mandatory as it was under the former Bankruptcy Act and Rules. *Id.* Nonetheless, the court held that because the debtor did not attend the hearing, an objecting party could have moved for a default judgment or pre-

sented enough evidence in her absence to sustain its burden of denying the discharge. *Id.* Ultimately, the district court found that the entry of a default judgment would not have been proper, affirming the bankruptcy court's findings that the plaintiffs failed to present enough evidence to sustain their burden. *Id.*

■■■ This Court wholeheartedly agrees that the current Code and Rules do not contain a mandatory denial of discharge if the debtor fails to appear at a trial objecting to the discharge. This Court further agrees that failure to appear and testify at a hearing objecting to discharge could result in a default judgment; however, this Court does not believe that the circumstances in this Proceeding warrant such a draconian measure. A default is clearly within the Court's discretion. Fed.R.Bankr.P. 7055 (1998). Federal Rule of Bankruptcy Procedure 4005 clearly places the initial burden of persuasion in an objection to discharge on the Plaintiff Fed. R.Bankr.P. 4005 (1998). *See also, Hunn v. Hunn (In re Hunn)*, 51 B.R. 981 (Bankr.M.D.Fla.1985)(finding that under Rule 4002(2) Plaintiff did present enough evidence to establish a denial of discharge and that the use of Defendant's deposition testimony, in her absence, did not rebut the Plaintiff's evidence). In this Proceeding, Plaintiff still had the burden to go forward and to prove the evidentiary basis for a default judgment; the entry of the default judgment would not be automatic. Therefore, although the Court finds that Defendant's election not to attend, regardless of motive, violated Rule 4002(2), the Court does not find that his failure to do so would result in a default judgment[2] as the Plaintiff still had the burden of going forward under Rule 4005.

---

**1.** Nonetheless, subsequent to trial, Plaintiff filed a Motion for Relief from Sanctions and Motion to Re-open Evidence with attached Affidavits of Plaintiff, P. Campbell Ford, and David S. Wainer, III, counsel for Plaintiff. (Doc. 24). The Court will deny the Motion for Relief from Sanctions as moot and will deny the Motion to Re-open Evidence. Had Plaintiff truly wanted the Court to assess the demeanor of Defendant, it

was her duty to ensure his compliance with Rule 4002(2), by insuring his presence with a subpoena.

**2.** It is possible that this Court would come to a different conclusion if the parties had entered into a pre-trial stipulation as to evidence and witnesses.

In addition to denying the Motion for Default Judgment, the Court finds that the Motions for Directed Verdict and for Sanctions must be denied. The Plaintiff failed to brief her basis for moving for a directed verdict;[3] therefore, the Court finds the Motion for Directed Verdict to be without merit. Second, although Plaintiff stated that Defendant was outside the Courthouse following the trial, the Court reiterates that his motive in not appearing is irrelevant at best and will not result in sanctions. Therefore, by denying the foregoing motions, the Defendant's Motion to Strike the Plaintiff's Motion for Default Judgment, Motion for Directed Verdict and Motion for Sanctions will accordingly be denied as moot.

At trial, the Court allowed the Plaintiff to enter into evidence all of her exhibits subject to the Defendant's written objections, stating that the Court would determine what was admissible evidence and would accord the appropriate weight to each document. Defendant filed an Objection to Plaintiff's Exhibits. (Doc. 37). Plaintiff responded. (Doc. 40 and 43). In his Objection, Defendant objected to Plaintiff's Exhibits 1, 2, 3, 5, 6, 7, 8, and 11, arguing that the exhibits are not relevant to the issues framed in the Complaint and that allowing Plaintiff to introduce such new matters at trial constitutes an amendment to the Complaint, which is time barred. Upon review of the Complaint, the Court first determines that the issues as framed in the Complaint involve the Defendant's personal property, the North Beach Pharmacy, Inc. stock, and the commercial real estate. Therefore, any evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the issues as framed above more or less probable than it would be without the evidence is relevant and has been taken into consideration by the Court,[4] and any of the evidence that does not relate to the issues as framed by the Complaint will not be considered by the Court.

■ Defendant urges that the allegations concerning the loss of funds to satisfy the Amended Final Judgment in the State Court constitute an additional issue not found in the Complaint and that the Court should not consider any evidence that relates to that issue.[5] The Court agrees with Defendant and finds that this issue was not plead in the original Complaint, nor mentioned in the original Complaint, nor was a copy of the Amended Final Judgment attached to the Complaint. Based upon the foregoing, the Court finds that this issue constitutes an additional ground not originally plead and is a "new ground" under § 727(a)(5). However, the Court could consider the issue if the time to file objections to discharge was extended, if the Complaint was amended, or if the Plaintiff sought to conform the pleadings to the evidence.

Federal Rule of Bankruptcy Procedure 4004 sets out a strict time limitations governing complaints brought pursuant to § 727(a). First, Rule 4004(a) provides that such complaints must be filed in a Chapter 7 case no later than 60 days after the first date set for the meeting of creditors. Fed.R.Bankr.P. 4004(a) (1998). Second, Rule 4004(b) allows a plaintiff seek an extension of this time period only upon a motion filed within the time period for filing the complaint. Fed. R.Bankr.P. 4004(b)(1998). In this Proceeding, Plaintiff never filed a motion to extend the time to object to Defendant's discharge on the basis that he failed to explain the loss of the funds to satisfy the State Court Amended Final Judgment within the time period set forth in Rule 4004(b).

---

**3.** Typically, a party moves for a directed verdict in a jury trial after the opposing party who carried the burden of proof on an issue has failed to present a prima facie case as to that issue. Fed.R.Civ.P. 50(a). A party's right to move for a directed verdict in a non-jury trial is often construed to be a motion made under Federal Rule of Bankruptcy Procedure 7041 or 7052(c).

**4.** These exhibits include Plaintiff's Exhibits 3, 5, 6, 7, portions of 8, and 11.

**5.** The Amended Final Judgment in the State Court Case was entered on June 3, 1997. (Pl.'s Ex. 1). The court found that the period in which total gross profits were generated to which Plaintiff had a rightful share ended in approximately March of 1995. (Pl.'s Ex. 1 at 3). In the Amended Final Judgment, the State Court found that "Defendant is now in possession of specifically identifiable funds...." (Pl.'s Ex. 1 at 4).

Courts diverge on the question of whether a court has the discretion to allow an amendment to a complaint objecting to discharge or to permit pleading amendments to conform to the evidence under Federal Rule of Bankruptcy Procedure 7015(b). *See, Biederman v. Oury (In re Biederman),* 165 B.R. 783 (Bankr.D.N.J.1994)(providing an in-depth discussion of the divergent views). Some courts believe that strong policy reasons limit a plaintiff's right to amend a § 727(a) complaint after the deadline. *See, e.g., Govaert v. Primack (In re Primack),* 89 B.R. 954 (Bankr.S.D.Fla.1988)(holding that the time limitations imposed by Rule 4004 restricts a court's discretion to conform the pleadings to the evidence, stating that "[a]ny other conclusion would vitiate B.R. 4004."). Other courts will consider an amendment under 7015(b) if they "relate back" to the original Complaint. *Melohn v. Klein (In re Klein),* 31 B.R. 947 (Bankr.E.D.N.Y.1983). The test to determine whether alleged new grounds "relate back" is "whether the original complaint puts the defendant on notice of the general wrong or conduct to which the amendment pertains. The inquiry should focus on the notice given by the general fact situation as set forth in the original pleadings." *Id.* at 950.

This Court believes in the rationale behind the *Primack* case, finding that Congress implicitly imposed time limitations on complaints and amendments under § 727(a), to ensure that the debtor would receive his "fresh start," by adding "finality" and "certainty" to questions involving the denial of a debtor's discharge. Therefore, as Plaintiff did not amend her Complaint and did not file an extension to amend her Complaint under 4004(b) to add this additional ground under § 727(a)(5), the Court will not consider this issue, nor any of the evidence relating to this issue.[6]

Even if this Court were willing to follow the line of cases which allows a "relation back" to the original complaint, the Court does not believe that this issue relates back as the Complaint specifically identified the three factual situations which lead to an alleged loss to the Estate: the decline in North Beaches Pharmacy, Inc., affecting the Defendant's stock, the decline in the value of Defendant's personal property, and the decline in the value of the commercial real estate. Never did Plaintiff mention the State Court Proceeding or the alleged loss of funds that were meant to satisfy the Amended Final Judgment. Therefore, the Court finds that Defendant was not on notice of this additional ground objecting to his discharge, which put him at a disadvantage, precluding him from being able to properly respond or to defend himself against these allegations. Even though Plaintiff alleged that certain discovery requests referred to the State Court Case, fairness dictates that the lateness of the hour in this Proceeding precludes the Court from considering the issue. Furthermore, it is important to note that Plaintiff never requested that the pleadings be amended to conform to the evidence.

■ Addressing the individual counts of the Complaint, Sections 727(a)(4)(A) and (a)(5) state in pertinent part:

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities...

11 U.S.C. § 727(a)(4)(A) and (a)(5)(1998). Federal Rule of Bankruptcy Procedure 4005 provides that the initial burden of proof on an objection to discharge lies with the Plaintiff. Fed.R.Bankr.P. 4005 (1998). However, it is well established that once the Plaintiff has met the initial burden by producing evidence which establishes a basis for the objection, the Defendant has the ultimate burden of persuasion. *See, Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 619 (11th Cir.1984); *Manhattan Leasing Systems, Inc. v. Goblick*

---

**6.** Therefore, the Court will sustain Defendant's objection to Plaintiff's Exhibits 1, 2, and portions of 8.

*(In re Goblick)*, 93 B.R. 771, 775 (Bankr. M.D.Fla.1988).

■■■■ Section 727(a)(4)(A) requires a court to find that the debtor knowingly made a false oath that was both fraudulent and material. *See, Swicegood v. Ginn*, 924 F.2d 230 (11th Cir.1991). To be fraudulent, the oath must be made with "a knowing intent to defraud creditors." *Parnes v. Parnes (In re Parnes)*, 200 B.R. 710, 714 (Bankr. N.D.Ga.1996) (citing *Swicegood*, 924 F.2d at 232). Fraudulent intent may be inferred from circumstantial evidence, including a series or pattern of errors or omissions. *Id.* For a false oath to be considered material, it must be shown that it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik*, 748 F.2d at 618 (citations omitted).

In the Proceeding at bar, Plaintiff alleges that the false oaths concern false values that Defendant provided in his Schedules, specifically (1) a false oath as to the value of the stock in North Beaches Pharmacy, Inc. and (2) a false oath as to the value of the commercial real estate. In a factually similar case, the court in *Parnes v. Parnes (In re Parnes)*, 200 B.R. 710 (Bankr.N.D.Ga.1996), faced the issue of a debtor listing the value of his interest in a dental practice as "unknown" on his bankruptcy schedules, but listed a value in both a divorce proceeding and a financial statement prior to filing bankruptcy. To support their § 727(a)(4)(A) argument, plaintiffs presented financial statements and affidavits of the debtor and testimony of an expert on the valuation of dental practices. *Id.* at 715. The debtor demonstrated that the indeterminate value was based on the practice being an "ongoing" concern which carried debt and would be determined at a "forced sale" without covenants not to compete. *Id.* at 717. The court believed the debtor's assertion that listing the value as "unknown" was the "most accurate valuation he could provide" and conformed to the expert's testimony and the other facts in the case. *Id.*

Similar to *Parnes*, the main thrust of Plaintiff's Complaint does not involve the Defendant's omission of any assets which he held as of the date of the filing of the Petition, but an "improper" valuation of assets. Although the Court is well aware of the discrepancies in the values submitted in the personal financial statement, the intangible tax returns, and the Schedules,[7] the Court also finds that these values equate to Defendant's opinion as to the value of the property as of the date of the filing of the Petition. A debtor's estimation is often far from exact, and is more often than not, based on estimates, not tangible facts.

■■■■ On the date of the filing of the Petition, Defendant believed that the 500 shares of North Beaches Pharmacy, Inc. stock had a zero value on the open market. Defendant believes that his share of stock represents part of a closely held corporation that requires his full participation in order to be a viable business venture.[8] Had Defendant omitted his ownership of the stock, the Court would likely come to an different conclusion; even if Defendant had listed the stock, yet was vague as to the amount or the name of the company, the Court would have felt that there was an attempt to defraud the Trustee and the Court. However, Defendant listed his ownership which alerted the Trustee to this asset. The facts alleged in Count II do not rise to the level of fraudulent intent required to be proven by the Plaintiff under § 727(a)(4)(A). Furthermore, had Defendant's Schedules been as egregious as alleged by Plaintiff, the Court believes that the

---

7. In Count II, Plaintiff alleged that Defendant submitted false oaths as to the value of the stock in the North Beaches Pharmacy, Inc., valuing the stock at zero, while he earlier, on his 1997 Florida Intangible Tax Return, listed the value of the stock at $75,000.

8. Defendant's position was bolstered by the deposition testimony of William Traer, who is the accountant for Defendant and North Beaches

Pharmacy, Inc. (Pl.'s Ex. 9). In his deposition, Traer stated that the value of the stock listed in the tax return is the "book value," which he defined as assets minus liabilities. (Pl.'s Ex. 9, p. 7, 1.2–6). However, Mr. Traer, also, stated that book value is not reflective of true market value of the stock, the true market rate being derived at by using a business valuation. (Pl.'s Ex. 9, p. 7, 1.12–18).

Trustee would have joined in this Objection to Discharge, which he did not.

Likewise, the Court finds that Defendant's valuation of the commercial real estate does not constitute a false oath. The appraiser hired by the Trustee testified that the liquidation value of the property would be approximately $435,000.[9] Defendant listed the value as $418,000, a mere difference of four percent. Although Defendant previously listed the value at $540,000, at the date of filing, Defendant only felt that the Property was worth $418,000. In his deposition, Defendant stated that the difference in the values on the bankruptcy schedules and financial statement was the difference between "liquidation value versus full value." (Pl.'s Ex. 8, p. 27, 1.19–21). The Court is not asked at this time to value the property, but merely to determine whether or not Defendant committed a false oath. The Court feels that he did not, as he listed the property and gave a value which, at the time, was a mere four percent less than the value given by an experienced appraiser; these facts in the Court's view do not establish an intent to defraud creditors as required by § 727(a)(4)(A), but instead demonstrate Defendant's bona fide effort to value his assets.

■■■■ Having found that Plaintiff did not sustain her burden under 11 U.S.C. § 727(a)(4)(A), the Court now turns to the allegations under 11 U.S.C. § 727(a)(5). Pursuant to Section 727(a)(5), "once it has been established that the debtor has a cognizable ownership interest in a specific identifiable property at any given time not too far removed in time from the date of filing his petition, the burden shifts to the debtor to explain satisfactorily the loss of that particular asset if at the time the petition is filed, the debtor claims that it no longer has the particular property." *Manhattan Leasing Systems, Inc. v. Goblick (In re Goblick)*, 93 B.R. 771, 775 (Bankr.M.D.Fla.1988). For a

debtor's explanation to be satisfactory, the explanation must "convince the judge." *Chalik*, 748 F.2d at 619 (citations omitted). "Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory." *Id.*

■■■ Pursuant to 11 U.S.C. § 727(a)(5), Count III alleged Defendant's failure to explain a loss or deficiency of assets to meet his liabilities, specifically stating that. (1) Defendant is the sole shareholder of a profitable business, the income of which could be used to satisfy creditors; (2) Defendant failed to provide an itemized list of household furnishings, which could be liquidated to satisfy creditors, and (3) pending the determination of the value of Defendant's commercial real estate, Defendant may have an asset which could be liquidated to satisfy creditors. Plaintiff argued in her post-trial memorandum that these facts along with several others establish a pattern of concealment, which resulted in a loss to the Estate.

As previously explained by this Court, Defendant did list that he owned stock in North Beaches Pharmacy, Inc., did list a value for his household furnishings, and did provide a value as to his commercial property. Plaintiff alleged that the zero valuation of the stock in North Beaches Pharmacy, Inc. was a "loss" from the $75,000 value Defendant listed on his 1997 Florida Intangible Tax Return. Defendant explained that the higher value represented the value if Defendant stayed at the pharmacy. (Pl.'s Ex. 8, p. 59, 1. 24–25; p.63, 1. 9–24).

Closely tied to this allegation is the loss of value in the North Beaches Pharmacy, Inc., a profitable business and allegations of discrepancies in the business' financial statements. The Court is not convinced that Plaintiff sustained her initial burden of proving an actual "loss" occurred.[10] Even if Plaintiff

---

9. At trial, Pettit testified that he gave an additional appraisal of the property on July 17, 1997, in which he found the market value of the property to be $581,000. (Tr. at p. 35, 1.18; Def.'s Ex. 1). Pettit explained the discrepancy of the two figures as the difference between fair market value and liquidation value, explaining that liquidation value is typically a lower value as the property

must be sold in ninety days; whereas, fair market value typically has a selling period of six to nine months. (Tr. at p. 36, 1. 6–16). Furthermore, Pettit testified that the property would have a decreased value if sold by Trustee in bankruptcy. (Tr. at p. 39, 1. 6).

10. In the deposition of William Traer, the accountant for Defendant and North Beaches Phar-

had sustained her burden, similar to the above analysis, the Court finds that the Debtor's opinion as to the value of the business and his ownership of 100% of the stock and the method in which he derived their values was satisfactorily explained.

The allegation concerning the "loss" of value of the personal property stems from the personal financial statement filled out by the Defendant in which he listed the value of his personal property at $10,000 and several weeks later listed the value at $2,000. Plaintiff alleges that this "loss" of value constitutes a loss to the Estate. Defendant adequately explained the differing values by explaining that he used the "liquidation value" on the bankruptcy schedules and used the "full value" on the financial statement. (Pl.'s Ex. 8, p. 41, 1.11–12, p. 42–43).

Furthermore, as outlined above, the "loss" of the value of the commercial real estate, was not an economic loss, but rather a difference in valuation methods. In all three instances, there was not a "loss" of tangible assets, but merely a varying opinion in value. As far as this Court is concerned, Plaintiff did not prove that the items lost value through some intentional and/or voluntary act of Defendant. The assets still have a value to the Estate and whether that value is higher, the same, or lower than Defendant's opinion of their value, they were not lost. Therefore, even without the Defendant's explanations, the Court does not believe that the Plaintiff sustained her burden of proving that there was a loss to the Estate.

The Court has considered the other allegations of a pattern of deceptive behavior,[11] including the loss of Defendant's projected income.[12] However, the Court is unconvinced that this alleged "loss" constitutes a loss to the Estate as required to be proven under § 727(a)(5) as with the other specific instances delineated above.

---

macy, Inc., Plaintiff questioned Traer on the apparent loss from an interim statement showing a positive net income of $80,180.15 to the year-end statement, showing a negative net income of $2,284. (Pl.'s Ex. 9, p. 14). Traer attributed the "loss" to a change in the inventory, where clients typically estimate the inventory for interim statements and do a physical count of the inventory for the year-end statement and stated "[l]et me state that I don't believe there was an $82,000 loss in any way...." (Pl.'s Ex. 9, p. 14, 1. 9–14; p. 15, 1. 11–12).

11. Defendant argued that the discussion of these acts constituting a pattern of behavior are in reality, an amendment to the Pleadings of which he was not on notice. As previously stated, any allegations relating to the "loss" of the funds to satisfy the State Court Amended Final Judgment will not be considered by this Court. However, the Court did consider the "loss" of projected income as Defendant was on notice by the allegations in the Complaint.

12. The Court reiterates that Plaintiff did not prove that Defendant did any affirmative act to hide assets or to intentionally create a reduction in his income, his business, or his assets.